289 P.2d 319

Orlin HUNSAKER, Plaintiff-respondent,

v.

C. A. RHODEHOUSE and Mary Rhodehouse, Defendants-appellants.

No. 8322.

Supreme Court of Idaho.

Oct. 28, 1955.

T. Harold Lee, Rigby, Nels T. Sahl, St. Anthony, for appellants.

A. A. Merrill, Idaho Falls, for respondent.

PORTER, Justice.

This action was brought by respondent to collect the alleged unpaid balance on a promissory note executed by appellants and to foreclose the real estate mortgage given to secure such note. By their answer appellants alleged payment of the promissory note; and by their cross-complaint asked for judgment for the penalties of usury. The trial court entered judgment in favor of respondent and ordered the foreclosure of the mortgage. From such judgment this appeal is being prosecuted.

The material and controlling facts in this case are not in serious dispute. Prior to October 14, 1952, appellants had on occasions borrowed money from or through one Asael Lyman. Mr. Lyman was a real estate and loan broker in Idaho Falls and transacted his business through an instrumentality known as the Lyman Corporation. On October 14, 1952, appellants requested a loan from Mr. Lyman in the

sum of $2,500. On October 15, Lyman called at the home of appellants located between Chester and Ashton, Idaho, and delivered to appellants two checks of the Lyman Corporation totaling the sum of $2,500. He had appellants sign two promissory notes, one in the sum of $200 and one in the sum of $2,600. The $2,600 note covered the $2,500 loan and included interest at 8 percent for six months in the sum of $100. This note was made due and payable April 15, 1953.

To secure the payment of the $2,600, Lyman caused appellants to execute and deliver to him a chattel mortgage covering certain potatoes and other personal property and a real estate mortgage. The $2,600 promissory note and the mortgages were in blank as to the name of the payee.

Respondent lives in Delta, Utah. On October 27, 1952, he first met Asael Lyman who was introduced and recommended to him by one E. L. Lyman, Uncle of Asael Lyman. The meeting occurred in Delta, Utah. Respondent, at the solicitation of Asael Lyman, gave the Lyman Corporation a check for $2,755 with which to make a loan to appellant, C. A. Rhodehouse. This was 12 days after the $2,500 loan had been made. An examination of the $2,600 note and the mortgages indicates that the name of respondent was then inserted in the instruments; and the two mortgages were, on November 17, 1952, filed for record in Fremont County. Thereafter, the mortgages and the $2,600 note were sent to respondent.

Respondent complained to Lyman about the amount of the note. Whereupon Lyman returned to respondent the sum of $130. Respondent then had an investment of $2,625 in a note for $2,600 composed of $2,500 principal and $100 future interest, and not bearing any further interest until after due date. Despite this discrepancy in amount, respondent made no further protest to Lyman nor any protest to appellants.

Part of the mortgaged potatoes were sold to one Merlin Hansen and his check dated February 16, 1953, in the sum of $200 was turned over by appellants to the Lyman Corporation in payment of the $200 note. Part of the potatoes were sold to the Atlantic Commission Co., Inc., for which appellants received a check dated February 6, 1953, in the sum of $617.07, and a check dated March 6, 1953, in the sum of $2,000. Both of these checks were turned over to Asael Lyman by appellants in payment of the $2,600 note; and were deposited by the Lyman Corporation. Asael Lyman promised to return the $17.07 overpayment but never did so.

At the time the checks were turned over to Lyman, appellants had never met or heard of respondent. They had no actual knowledge that respondent or anyone other than Asael Lyman or the Lyman Corporation held the note and mortgages.

The note was made payable at the office of the Lyman Corporation in Idaho Falls. However, Asael Lyman came to the home of appellants and collected the $2,000 check.

On March 28, 1953, respondent received from the Lyman Corporation the sum of $1,000 to be credited on the $2,600 note. Not having such note available, respondent credited the same on the chattel mortgage. The record does not disclose where the note was at such time.

Respondent testified that at the time he received the note and mortgages he examined the same carefully. Such examination disclosed or should have disclosed to him that the loan to appellants was made and the papers executed approximately two weeks before he had become acquainted with Asael Lyman or had advanced any money to the Lyman Corporation. It was obvious that Lyman had wrongfully taken $2,755 from respondent with which to cover the $2,500 loan to appellants. And it must have been apparent to respondent that the note and mortgages had been executed in blank and that his name had been inserted as payee after he made the advance to the Lyman Corporation. Not only the element of time but the typing of his name in the instruments shows a later insertion. In the face of these facts and the discrepancy in the amount of the loan, respondent did not notify appellants that he had purchased or was the owner and holder of the note and mortgages.

The first time appellants ever heard of or met respondent was when he came to their home in the last week of June, 1953, seeking to collect the alleged unpaid balance on the promissory note. C. A. Rhodehouse testified that respondent, when told that the note had been paid in full to the Lyman Corporation, said "That's what I was afraid of." The record indicates that in the meantime Asael Lyman had absconded without transmitting to respondent the balance paid on the indebtedness.

The trial court found that appellants did not demand the evidence of indebtedness at the time of the delivery of the checks to Asael Lyman and that it is not shown that Asael Lyman or the Lyman Corporation had such evidence of indebtedness at the time the payments were made. It is apparent that it was upon these two facts that the court based its finding that the Lyman Corporation was not the agent of the respondent for the purpose of receiving payment of the loan.

The legal principles applicable in a case of this kind were discussed in Whalen v. Vallier, 46 Idaho 181, at page 190, 266 P. 1089, at page 1092, where a payment on the principal of the indebtedness was made to an alleged agent. The court said:

"Since this was a payment made to a third party, the burden of proof was upon appellants to show that the Ed-

ward Stein Company or Allen Stein had either express, implied, or ostensible authority to accept the payment so made (30 Cyc. 1265); or there must have been proof of such acts or conduct on the part of respondent as to estop him from denying that authority rested with the Edward Stein Company or Allen Stein to receive on his behalf the payment made by appellants on the principal.

\* \* \* \* \* \*

"\* \* \* A note and mortgage not in the hands of an agent of the mortgagee when the agent collects the principal is not conclusive on the question of authority to receive the principal, but is a matter of evidence to be weighed in connection with all the facts."

The same principles were recognized and applied in Nielson v. Westrom, 46 Idaho 686, 270 P. 1054.

The fact that the alleged agent is not in possession of the evidence of indebtedness at the time of payment is only evidence to be considered in connection with all the facts and circumstances shown in determining whether or not an agent has actual or apparent authority to receive payment. 2 Am.Jur., Agency, page 131, par. 163. It is not conclusive against the existence of authority or apparent authority in the agent to receive payment as seems to have been the view of the trial court.

In 2 Am.Jur., Agency, page 86, par. 104, in discussing estoppel to deny authority of agent, it is said:

"\* \* \* Accordingly, stating the rule as one of estoppel, where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has authority to perform a particular act and deals with the agent upon that assumption, the principal is estopped as against such third person from denying the agent's authority, he will not be permitted to prove that the agent's authority was, in fact, less extensive than that with which he apparently was clothed. This rule is based upon the principle that where one of two innocent parties must suffer from the wrongful act of another, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the wrong and cause the loss."

In Morgan v. Neal, 7 Idaho 629, 65 P. 66, in holding that the payment of principal of promissory notes made to an agent was good, the court pointed out that the borrower had fully paid all he contracted to pay and to the party with whom he made the contract, as is true in the instant

case. The court further said, 7 Idaho 633, 65 P. 67:

"Respondent testifies that he had no knowledge or information that appellant was the owner of said notes until long after he had made final payment thereof. From all these facts admitted by the pleadings and shown by the record, it seems clear to us that, if appellant was the owner of these notes (and we are satisfied from the record she was), she is estopped from denying the agency of the Colorado Security Company, and this is certainly true where it is shown that respondent acted in good faith in all payments. The old equity rule that where two parties are at fault, and one must lose, the one most at fault should suffer the loss, is applicable in this case."

See also, Pennypacker v. Latimer, 10 Idaho 618, 81 P. 55.

In Campbell v. Gowans, 35 Utah 268, 100 P. 397, 401, 23 L.R.A.,N.S., 414, 19 Ann.Cas. 660, in upholding payment of the principal sum of the note to the agent, the court said:

"We believe these cases state the better rule. They proceed on the theory, not that some one particular fact, such as the failure of the assumed agent to have possession of the securities, is determinative or conclusive of the question of agency and author-ity, but on the broader doctrine, well stated in Johnson v. Milwaukee & W. Inv. Co., 46 Neb. 480, 64 N.W. 1100, that 'where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform, on behalf of his principal, a particular act, such particular act having been performed, the principal is estopped as against such innocent third person, from denying the agent's authority to perform it.'

\*     \*     \*     \*     \*     \*

"The principle invoked in these cases, and as expressed in some of them, is but the application of the maxim declared many years ago by Mr. Justice Ashhurst, in the case of Frith v. Leroux, 2 T.R. 70 (2 D. & E. 23), that 'we may lay it down as a broad general principle that, wherever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.' "

In Harrison v. Auto Securities Co., 70 Utah 11, 257 P. 677, 57 A.L.R. 388, involving the question of agency, in Syllabus 4, it is said:

"Where one of two innocent parties must suffer from wrongful act of third

person, loss should fall on one who by his conduct, created circumstances which enabled third party to perpetrate wrong and cause loss."

The principle that where one of two innocent parties must suffer from wrongful act of third party, loss should fall on him who made such act possible, is particularly applicable where there were indications of dishonesty on the part of the agent which were known to the principal, as is the situation in the case at bar. In Masterson v. Haislett, 119 Wash. 650, 206 P. 359, 360, where a payment of principal was made to the alleged agent, one Rhodes, and appropriated by him, the court said:

"About two years before the maturity of this mortgage debt, appellant became dissatisfied with Rhodes, but permitted him to continue to make collections on loans and report. He did not discharge Rhodes. Under such a state of affairs the fault, if any, was with appellant, who put it in the power of Rhodes to defraud respondents, and not the fault of respondents. Rhodes was the agent of appellant, and not of respondents."

In Browne v. Hoekstra, 279 Pa. 418, 123 A. 861, 863, in discussing payment of principal made to an agent and misappropriated by the agent, the court said:

" * * *, although defendant knew he had misappropriated moneys belonging to him, he left in his possession the mortgage in question, which was past due, and thus enabled him to commit the wrong which he perpetrated. Under these circumstances, the rule would apply that where one of two innocent persons must suffer loss by reason of the fraud of another, the loss must fall on him by whose act the wrongdoer has been enabled to commit the fraud. Froio v. Armstrong, 277 Pa. 18, 120 A. 693."

The case of Ulen v. Knecttle, 50 Wyo. 94, 58 P.2d 446, 448, 111 A.L.R. 565, contains an extended discussion of and citation of authority on the governing principles in a case where payment is made on negotiable paper to an alleged agent but not remitted by the agent to the principal. In connection with the discussion, the court, after pointing out that the general rules governing cases of this kind are reasonably well settled, states it must be borne in mind that "after all, each case must to a more or less extent rest upon its own facts, and there may be various combinations of these facts." This case also touches on the principle that when one of two innocent parties must suffer it should be the party who made the loss possible.

The Ulen case defines apparent or ostensible authority as that which the principal holds the agent out as possessing, or which the principal permits the agent to represent that he possesses.

In the case at bar it was through the inaction and fault of respondent that the agent, Asael Lyman, was permitted to represent to appellants that he had authority to collect the principal of the indebtedness. The agent having ostensible authority to collect the principal on such promissory note, the respondent is estopped to deny such authority. The facts in this case do not support the court's finding that Asael Lyman or the Lyman Corporation was not the agent of respondent with authority to collect the principal of the note in question.

Appellants prayed that the transaction be declared usurious and for a judgment for penalties. The evidence does not show that respondent received the $200 note or had any knowledge thereof. The evidence does not sustain the court's finding that respondent's transaction was usurious and does not show that under the provisions of Section 27-1907, I.C., respondent knowingly charged and received interest in excess of the lawful rate.

The judgment of the trial court in favor of respondent is reversed and the cause remanded to the trial court with direction to vacate such judgment and to enter judgment in favor of appellants and directing that respondent release the mortgages of record. Costs awarded to appellants.

TAYLOR, C. J., and KEETON, ANDERSON and SMITH, JJ., concur.