Argued July 26, affirmed in part; reversed in part August 29, reconsideration denied October 12, 1977, petition for review pending

STATE OF OREGON, *Appellant,*
*v.*
NORMAN BRADLEY CRAMPTON,
*Respondent—Cross-Appellant.*
(No. C 75-12-3924 Cr, CA 7298)

568 P2d 680

Al J. Laue, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Gregory Lynch, Portland, argued the cause and filed the briefs for respondent—cross-appellant.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

THORNTON, J.

## THORNTON, J.

This appeal involves the construction of our statutes dealing with the forfeiture of a motor vehicle allegedly used in committing a narcotics offense. The single issue presented is whether a defendant whose vehicle was seized by police following his arrest for an alleged narcotics offense may thereafter give a lien on the vehicle in favor of another, which lien takes precedence over the state's forfeiture proceedings under ORS 167.247.[1]

The state appeals from that portion of an order of the trial court holding that defendant could encumber his seized motor vehicle by giving the challenged lien.

The vehicle in issue was seized and impounded by sheriff's officers on December 12, 1975, incident to defendant's arrest. The officers were not, however, acting pursuant to any writ issued by a court.

The trial court found the essential facts to be as follows:

"4. From the first contacts defendant had with the attorney-claimant on or about December 13 or 14, 1975, both defendant and claimant were actually aware of the fact that the vehicle had been seized by narcotics officers as a consequence of an alleged criminal drug offense by

[1] ORS 167.247 provides:

"(1) A district attorney or peace officer charged with the enforcement of ORS 167.202 to 167.228, having personal knowledge or reasonable information that narcotic or dangerous drugs are being unlawfully transported or possessed in any boat, vehicle or other conveyance, may search the same without warrant and without an affidavit being filed. If narcotic or dangerous drugs are found in or upon such conveyance, he may seize them, arrest any person in charge of the conveyance and as soon as possible take the arrested person and the seized drugs before any court in the county in which the seizure is made. He shall also, without delay, make and file a complaint for any crime justified by the evidence obtained.

"(2) Any boat, vehicle or other conveyance used by or with the knowledge of the owner, operator or person in charge thereof for the unlawful transportation, possession or concealment of narcotic or dangerous drugs shall be forfeited to the state in the same manner and with like effect as provided in ORS 471.660 and 471.665."

the defendant for which he had been arrested and charged.

"5. By mutual consent of defendant and the attorney-claimant, defendant agreed to transfer a lien interest in the vehicle to the attorney-claimant, which interest was to be for the amount of legal expenses defendant incurred to the attorney-claimant for services rendered in the defense of defendant's said pending criminal drug case.

"6. Defendant took the title to the attorney-claimant's office, and on December 30, 1975, attorney-claimant's name was inscribed on the title as a lien-holder, and an amended Certificate of Title was later issued by the Oregon Motor Vehicles Division showing the attorney-claimant as a lienholder.

"7. On December 30, 1975, the District Attorney for Multnomah County served and filed a Motion for Order to Retain Vehicle Pending Litigation (ORS 167.247) (later corrected in one respect by a 'Corrected' motion signed January 22, 1976). Attorney-claimant acknowledged certified mail service of the first motion on December 31, 1975.

"8. During the period between attorney-claimant's first meeting with defendant on or about December 13-14, 1975, and the amendment of defendant's vehicle title to reflect attorney-claimant's claimed lien interest on December 30, 1975, attorney-claimant had at least two telephone conversations concerning the status of the vehicle with Sgt. Charles Fessler, of the Multnomah County Sheriff's Office, whom attorney-claimant knew to be the sheriff's officer in administrative charge of vehicle forfeitures arising from ORS 167.247, in both of which communications Sgt. Fessler advised attorney-claimant that the car would not be released because it was requested to be forfeited under the narcotics vehicle forfeiture laws."

The trial court concluded:

"9. Prior to the filing of plaintiff's first Motion to Retain Vehicle Pending Litigation and actual notice thereof to attorney-claimant, defendant was free to dispose of or encumber his vehicle free of any interest by plaintiff State of Oregon; consequently, defendant's

transfer of a lien interest to attorney-claimant on December 30, 1975, was valid.

"10. Neither the actual knowledge of the seizure of the vehicle under the narcotics laws nor the actual knowledge by attorney-claimant that the seizing law enforcement agency was requesting its forfeiture prior to December 30, 1975, affects the attorney-claimant's lien interest, since he had no actual knowledge of any formal forfeiture action by the District Attorney at the time his lien was created.",

and ruled that the attorney-claimant's lien was valid.

The court ordered the vehicle forfeited and also ruled that defendant's motion for return of the vehicle on the grounds of alleged violation of constitutional rights respecting cruel and unusual punishment or denial of equal protection of the law was not well founded.

Defendant cross-appeals from that portion of the trial judge's order forfeiting the vehicle and denying defendant's motion for return of the vehicle.

The state argues that the subject vehicle from the moment of police seizure was in the custody of the law ("in custodia legis"), that a lien cannot be created in property in custody of the law and that the trial court erred in ruling otherwise.

Defendant answers by asserting that the doctrine of "custodia legis" does not apply under the facts because the vehicle was not in the " ' * * * official custody of a judicial executive officer in pursuance of his execution of a legal writ * * *'," citing *inter alia Bank v. Livingood*, 83 Kan 118, 121, 109 P 987, 988 (1910).

The state relies on the early case of *Dahms v. Sears*, 13 Or 47, 11 P 891 (1885). In *Sears* one Kittener was

"* * * confined in the county jail of Multnomah County upon civil process; that he had in his possession the currency mentioned in the complaint, and that the jailer and Witherell, who was deputy sheriff, conceiving or pretending to think that his actions were peculiar, and that he might have something on his person that would

[ 783 ]

enable him to make his escape, searched him, and found upon his person the said currency, and took it from him, and delivered it over to Sheriff Sears. \* \* \*" 13 Or at 51.

The money was taken from Kittener's possession on October 23, 1883. On February 8, 1884, Kittener assigned to his attorney, the plaintiff, his interest in the money. The court stated:

"\* \* \* I am of the opinion that property taken from a prisoner under such circumstances is not the subject of attachment or levy, by virtue of an execution. The security of the public may justify the searching of a prisoner confined in prison upon criminal or even civil process, and the taking from him of any property in his possession that would aid him to make an escape. \* \* \*" 13 Or at 56.

The court held that the execution of the judgments upon the sums held by the sheriff was improper in *Sears.*

The state argues that property held by the state is not subject to the creation of a lien upon that property during the period of the state's possession anymore than it is subject to attachment or execution, citing *Sears* and *Saper v. West,* 263 F2d 422, 427 (2d Cir 1959).

We do not regard *Sears* as directly in point.

For reasons which follow we conclude that the trial court was correct in all respects except in ruling that the attorney-claimant's lien was valid.

It is not disputed that the vehicle properly came into the possession of the state pursuant to the provisions of ORS 167.247, and that the attorney-claimant was aware that the vehicle had been seized by narcotics officers as a consequence of defendant's arrest for an alleged narcotics offense.

As already noted the state relies upon the doctrine of "in custodia legis." It is true as defendant argues that there is a line of cases holding that the doctrine of "in custodia legis" does not apply until the subject

money or property is in the " ' * * * official custody of a judicial executive officer in pursuance of his execution of a legal writ * * *"," *Bank v. Livingood, supra,* and that the officers were not acting pursuant to any writ. However, no case has been cited to us giving such a narrow interpretation where, as here, the property has been seized by the police under the provisions of a seizure and forfeiture statute, such as ORS 167.247 and 471.660 et seq.

■ While we have found no Oregon cases in point, the authorities in other jurisdictions uniformly hold that whenever a statute enacts that upon the commission of a certain illegal act specific property used in or connected with the act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the state, although its title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the state at the time the offense is committed and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith. *United States v. Stowell,* 133 US 1, 10 S Ct 244, 33 L Ed 555 (1890). *Accord: Simons v. United States,* 541 F2d 1351 (9th Cir 1976); *United States v. One 6.5 mm. Mannlicher-Carcano Military R.,* 250 F Supp 410 (ND Tex 1966); *United States v. One 1957 Model Tudor Ford,* 167 F Supp 864 (ED So Car 1958); *Spagnuolo v. Bonnet,* 16 NJ 546, 109 A2d 623 (1954); *People v. Grant,* 52 Cal App2d 794, 127 P2d 19 (1942).[2]

■ Accordingly we conclude that no post-seizure lien can be created where the subject property has been thus seized, and that the attorney-claimant's lien at bar cannot prevail.

■ When property becomes liable to forfeiture under the positive provisions of our forfeiture statute, the

---

[2]See additional authorities to same effect collected in 37 CJS 22-23, Forfeitures § 6 (1943, Supp 1977).

only lienors protected from the forfeiture are those whose liens attached prior to the illegal act or acts. *See,* ORS 471.665.

■■   As to defendant's cross-appeal, defendant argues that the forfeiture constitutes part of the fine and thus exceeds the statutory maximum sentence, and further that the state's policy of seeking forfeiture only in certain cases depending on the encumbrance thereon and the needs of the police for an undercover vehicle is unconstitutional. Neither contention can be sustained. *See, Commonwealth v. Certain Motor Vehicle,* 261 Mass 504, 159 NE 613, 61 ALR 548 (1928); 36 Am Jur2d 611 et seq, Forfeitures and Penalties § 1 et seq (1968), as to the first point. On defendant's second point *see, State v. Bailleaux,* 218 Or 356, 343 P2d 1108 (1959), *cert denied* 362 US 923, 80 S Ct 677, 4 L Ed 2d 742 (1960); *Delaney v. Gladden,* 397 F2d 17 (1968), *cert denied* 393 US 1040, 89 S Ct 660, 21 L Ed 2d 585 (1969).

Affirmed in part; reversed in part.

**LEE, J.,** specially concurring.

I agree that the attorney-claimant's lien at bar cannot prevail but do not concur with the implication of the lead opinion that the "forfeiture takes effect immediately upon the commission of the act" and "relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith." 30 Or App at 785.

In my opinion the pivotal time after which no further liens may attach is the moment when the state takes physical possession of the vehicle.

**SCHWAB, C. J.,** dissenting.

I do not agree with that portion of the majority opinion that invalidates the lien.

As the majority points out, the present problem involves "construction of our [forfeiture] statutes." 30

Or App at 781. The majority construes ORS 471.665 as providing that "the only lienors protected from the forfeiture are those whose liens attached prior to the illegal act or acts." 30 Or App at 785. ORS 471.665 does not stand for that proposition. The indications in the statute are to the contrary.

ORS 471.665(3) provides for forfeiture of vehicles used to violate drug statutes. It repeatedly refers to paying *all* liens upon forfeiture, e.g., "The sheriff shall pay all the liens." ORS 471.665(1) provides for forfeiture of vehicles used to violate liquor statutes. It states in part:

> " * * * No claim of * * * interest in or to such vehicle that is otherwise valid shall be held invalid unless the state shows to the satisfaction of the court, by clear and convincing evidence, that the claimant had knowledge that the vehicle *was used* or to be used in violation of law * * *." (Emphasis supplied.)

I presume the legislature intended that ORS 471.665(3)—forfeiture for illegal drug activities—and ORS 471.665(1)—forfeiture for illegal liquor activities—be interpreted together and harmoniously. I read them to mean that *all* liens, both those perfected before a police seizure and those perfected thereafter, are judged by the same standard, i.e., they are equally valid unless the claimant had actual knowledge that the vehicle was used or to be used in violation of law.[1]

The majority instead interprets ORS 471.665 to mean that "forfeiture takes effect immediately upon the commission of the [illegal] act" and that all subsequent "sales and alienations, even to purchasers in good faith," are void. 30 Or App at 785. I agree that *United States v. Stowell,* 133 US 1, 10 S Ct 244, 33 L Ed

---

[1] It may well be that on the facts of this case the state could have made a showing that this claimant had sufficient knowledge that the vehicle upon which he took a lien was previously used in connection with illegal drug activities. But the state here makes no such claim, arguing instead for a rule, adopted by the majority, that makes all post-seizure liens per se invalid.

555 (1890), does so interpret a federal forfeiture statute. I do not agree that this is the proper interpretation of ORS 471.665. Unlike the federal forfeiture statute involved in *Stowell*, ORS 471.665(1) provides that all otherwise valid claims of interest in an impounded vehicle remain valid unless "the claimant had knowledge that the vehicle *was used* or to be used in violation of law." (Emphasis supplied.) The majority interpretation, which would cut off the rights of even a good-faith purchaser, nullifies the "was used" language of ORS 471.665(1).

Assuming for the sake of discussion that ORS 471.665 is inconclusive and does not already foreclose adoption of the majority's interpretation, I would reject that position for policy reasons. I would hold that between the time police seize property and the subsequent issuance of any judicial process, writ or attachment the owner has complete property rights, including the right to grant a lien, until there is a judicially sanctioned seizure of his property by process, writ or attachment, etc., subject in the meantime to the state's superior claim to temporary possession.

The rule I propose has the advantage of certainty—the time that a judicial attachment occurs being readily ascertainable. The majority's rule has the disadvantage of vagueness—it not being as readily ascertainable when "property has been seized by police under the provisions of a seizure and forfeiture statute." 30 Or App 785. Does this mean an officer's subjective intent? Or his articulated reason for a seizure? Or the reason he could have but did not articulate? With warrantless seizures of motor vehicles we often deal with shades-of-gray probabilities—will the crime laboratory report the pills seized from an arrested driver were illegal drugs, as suspected by the police, or a prescription medication, as claimed by the driver? Until the investigation is complete, it is impossible to say, as the majority would require, whether the vehicle was seized under a forfeiture statute.

Admittedly, the longer a person whose car is seized is able to convey an interest in it, the greater the danger of subterfuge to circumvent the forfeiture statute—although the actual-knowledge test in ORS 471.665(1) at least reduces this danger. On the other hand, immediately suspending all ownership rights in a vehicle impounded by the police is a drastic step. The rule I propose is a reasonable accommodation of these conflicting considerations; full ownership rights would continue for the hopefully brief interval it would require public officials, moving expeditiously, to obtain some form of court order which would, in effect, be a judicially sanctioned lien on the vehicle in question.

My concerns are not purely theoretical. The trial court's finding in this case included the following:

"3. The vehicle of a co-defendant in the same factual occurrence was initially also seized under ORS 167.247, but forfeiture was ultimately not requested by the sheriff's office nor initiated by the District Attorney because that vehicle was subject to an outstanding preexisting lien well over $1000 which expense the sheriff's office was not prepared to pay."

The record does not reveal how long this other vehicle was in police custody while the decision not to initiate forfeiture proceedings was made. I infer it was a substantial length of time. *Cf., State ex rel Haas v. One 1965 Ford,* 19 Or App 879, 529 P2d 410 (1974), Sup Ct *review denied* (1975). I find no persuasive basis in the majority opinion for joining the holding that, for what was apparently a substantial length of time, the owner lost his usual right to convey a lien while the district attorney weighed the decision whether to initiate forfeiture proceedings.

I would uphold the lien in this case and therefore respectfully dissent.