732 P.2d 670

**STATE of Idaho, ex rel. John ROONEY, Director of the Department of Law Enforcement of the State of Idaho, Plaintiff-appellant,**

v.

**ONE 1974 GREEN TARGA PORSCHE AUTOMOBILE, VIN NUMBER 911411606, IDAHO LICENSE NUMBER 1A M231, Defendant-respondent,**

and

**First Security Bank of Idaho, N.A., Real party in interest-respondent.**

No. 16185.

Supreme Court of Idaho.

Dec. 3, 1986.

Rehearing Denied Feb. 26, 1987.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., A. René Fitzpatrick, Deputy Atty. Gen., Boise, for plaintiff-appellant State of Idaho.

Michael L. Schindele, Boise, for real party in interest-respondent First Security Bank, N.A.

BAKES, Justice.

This is an appeal by the State of Idaho from a district court order upholding a lien held by First Security Bank (bank) in a Porsche automobile. The auto is the subject of a forfeiture action by the State of Idaho. The district court held that the bank had a valid and perfected lien and ordered the Porsche released to the bank. We reverse.

The parties stipulated to the following facts. The state and First Security Bank claim ownership of a 1974 Porsche automobile. The state's claim arises under I.C. § 37–2744, which allows forfeiture to the state of property used in drug trafficking. Rudy Stephenson was the original owner of the Porsche. On June 4, 1984, Stephenson transferred title to the Porsche to Edward Thompson for $4,000. During this period, Stephenson retained possession of the car and held an option to repurchase the car. On July 11, 1984, Stephenson was arrested for allegedly trafficking in cocaine. The police seized the car, which had been used to transport drugs, from Stephenson on July 18, 1984, pursuant to the forfeiture statute.

On August 9, 1984, the state filed its forfeiture complaint and sent notice of forfeiture to Stephenson and Thompson by certified mail. Afterwards, on August 20, 1984, Thompson sought a loan from First Security Bank. The loan, for $8,000, was granted on August 27, 1984, with the bank taking a lien on the Porsche.[1] The bank did not inspect the Porsche, which had been in police custody for over a month.

On August 30, 1984, the attorney for Thompson and Stephenson answered the state's complaint of August 9, 1984. Hearing was held on December 7, 1984, and on December 17, 1984, the Porsche was ordered forfeited from Thompson and Stephenson. On June 5, 1985, after an additional hearing, the district court held that the bank had a valid and perfected lien and ordered the Porsche released to the bank.

The central issue in this case is one of statutory construction. The issue is whether under I.C. § 37–2744 the state's interest in the Porsche vested before the bank's

---

1. The lien was noted on the title which was re-issued on September 21, 1984.

interest. In other words, at what point under the statute did the state's interest in the Porsche arise.

The relevant portions of the statute in question, as it existed in 1984, read as follows:

"37–2744. **Forfeitures.**—(a) The following *are subject to* forfeiture:

...

"(4) All conveyances, including aircraft, *vehicles*, or vessels, *which are used, or intended for use*, to transport, or *in any manner to facilitate the transportation*, delivery, receipt, possession or concealment, *for the purpose of distribution or receipt* of property described in paragraph (1) or (2) [controlled substance] hereof, but:

...

"(B) No conveyance is subject to forfeiture under this section if the owner establishes that he could not have known in the exercise of reasonable diligence that the conveyance was being used to unlawfully transport any property described in paragraph (1) or (2) [controlled substances] hereof, but:

...

(D) A forfeiture of a conveyance encumbered by a bona fide security interest is subject to the interest of the secured party if he neither had knowledge of or reason to know nor consented to the act or omission.

...

"(d) Property taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the director subject only to the orders and decrees of the district court, or magistrate's division thereof, having jurisdiction over the forfeiture proceedings. Forfeiture proceedings shall be civil actions against the property subject to forfeiture and the standard of proof shall be preponderance of the evidence.

...

"[ (3)(D) ] (IV) An owner, co-owner or claimant of any right, title, or interest in the conveyance *may prove that his right*, title, or interest, whether under a lien, mortgage, conditional sales contract or otherwise, *was created without any knowledge or reason to believe that the conveyance was being or was intended to be used, for the purpose charged;* ...." (Emphasis added.)

This statute was adopted in Idaho in 1971 from the Uniform Controlled Substances Act. 1971 Idaho Sess. Laws, ch. 215. The forfeiture statute was modeled after 21 U.S.C. § 881 adopted by the United States Congress in 1970.

## I

The bank's interest in the Porsche arose on August 27, 1984. There are three dates on which the state's rights may have vested under I.C. § 37–2744: (1) the date of the illegal activity, July 11, 1984; (2) the date the state seized the Porsche, July 18, 1984; (3) the date the district court made a judicial determination that the car was subject to forfeiture, December 17, 1984.

■ (1) *Date of the illegal activity:* The seminal case regarding forfeitures is the early case of *United States v. Stowell*, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890), in which the United States Supreme Court chose the date of the illegal activity as the time when the government's rights vest under the federal forfeiture statutes then in effect. The court held:

"By the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; *and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith."* *United States v. Stowell,*

133 U.S. at 16, 17, 10 S.Ct. at 247 (emphasis added).

The *Stowell* rule has been widely adopted by the federal courts. *See United States v. $84,000 U.S. Currency,* 717 F.2d 1090 (7th Cir.1983); *Ivers v. United States,* 581 F.2d 1362 (9th Cir.1978); *United States v. One 1975 Chevrolet, etc.,* 495 F.Supp. 737 (W.D.Mich.1980); *United States v. $36,125 in U.S. Currency,* 510 F.Supp. 303 (E.D. La.1980). Closer to Idaho, Oregon has also adopted *Stowell* in *State v. Crampton,* 30 Or.App. 779, 568 P.2d 680 (1977), holding "that no post-seizure lien can be created where the subject property has been seized." *State v. Crampton, supra* 568 P.2d at 684. In *People v. Grant,* 52 Cal. App.2d 794, 127 P.2d 19 (1942), California adopted the *Stowell* doctrine for statutory forfeiture.

*Stowell* created a strict rule which holds that after there has been a judicial determination that the subject property was indeed involved in illegal acts, the doctrine of relation back is invoked. Under this doctrine, the government's rights in the property are perfected and effective at the time such illegal acts were committed and thereby defeat all innocent third party interests which may have arisen in the interim. *See Simons v. United States,* 541 F.2d 1351 (9th Cir.1976); *United States v. One Piece of Real Estate, etc.,* 571 F.Supp. 723 (W.D. Tex.1983); *United States v. One 1975 Chevrolet, etc., supra; United States v. One 1951 Douglas DC–6 Aircraft,* 525 F.Supp. 13 (W.D.Tenn.1979). A literal interpretation of *Stowell* would cut off the innocent third party at the date of the violation, even if the third party had no notice of the previous use of the subject property.

(2) *The date of seizure:* The date of seizure would serve to protect innocent parties that would be harmed under the *Stowell* rule. The federal government has administratively modified *Stowell* by protecting lienholders through an act of executive clemency. The court in *United States v. One Piece of Real Estate, etc., supra,* pointed out that:

"Historically, the remedy of the innocent holder of a lien interest in property forfeited under Section 881 and other statutes has been to petition the Attorney General of the United States for remission or mitigation, an act of executive clemency. Thus, although innocent lienholders could not prevent forfeiture of their interests, they could request an administrative determination that certain properties be returned or a portion of the proceeds of sale be paid to them. (Citations omitted.)" 571 F.Supp. at 724.

The court went on to note that "[i]n ruling on petitions for remission and mitigation, the Department of Justice has consistently taken the position that a lienholder's interest is cut off as of the date of the seizure." *United States v. One Piece of Real Estate, etc.,* 571 F.Supp. at 725. "[T]he pivotal time after which no further liens may attach is the moment when the state takes physical possession of the vehicle." *State v. Crampton,* 30 Or.App. 779, 568 P.2d 680, 684 (1977) (Lee, J., specially concurring). Using the date of seizure would moderate the effects of *Stowell* and still uphold the deterrent purposes of the statute.

(3) *The date of judicial determination:* The bank argues that, according to 37 C.J.S. Forfeitures § 6(b) (1943), there are two types of statutory forfeiture—mandatory and permissive. A statute is mandatory if it declares in absolute terms that property is forfeited on the commission of an offense. A statute is permissive if the state is given an alternative to forfeiture or has an election to proceed. Under a permissive statute an innocent person may acquire a title which cannot be impaired by the subsequent action of the state. Since the state's rights under a permissive statute are not perfected until after a judicial determination, the bank's position is that it only had to perfect its interest before the judicial determination of forfeiture on December 17, 1984. The bank asserts that the language "subject to forfeiture" which exists in the Idaho statute is intended to create just such a permissive statute. The legal support for using the date of judicial determination is found in a Fifth Circuit case which stated

that a statute that used "subject to forfeiture" language was permissive, and under a permissive statute the government's interest did not vest until a judicial determination was made. *United States v. Currency Totalling $48,318.08,* 609 F.2d 210 (5th Cir.1980). This is clearly a minority position.

## II

Forfeiture is the divestiture of specific property without compensation, in consequence of some default or act forbidden by law. 37 C.J.S. Forfeiture § 1 (1943). Statutory forfeiture has been entrenched in the law since pre-colonial times. *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). The United States Supreme Court has stated that the purpose of a forfeiture statute is to attack the economic aspects of certain crimes, as well as to prevent further illicit use of the property. *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. at 679, 94 S.Ct. at 2089. In accepting this policy behind statutory forfeiture, we must seek to construe I.C. § 37–2744 to protect the purpose of the law while, at the same time, protecting the rights of parties whose property interests are protected by the act. A statute should be interpreted to mean what the legislature intended it to mean, and to accomplish what the legislature sought to achieve by its passage. *Smith v. Dept. of Employment,* 100 Idaho 520, 602 P.2d 18 (1979).

Respondent bank's position that the state received no interest in the Porsche until the district court made a determination is difficult to reconcile with the purposes of the statute. Using this date would, in effect, severely limit the purpose of the statute by setting such a late time for vesting of the state's rights that seizure of forfeited property would be rendered ineffective. By not allowing the state's rights in forfeited property to vest until there has been a judicial determination, criminals would be able to avoid the law altogether by encumbering their property after seizure, effectively turning their loss into cash. We do not believe that the legislature intended to allow a third party to get an interest (post-seizure) that is stronger than the state's interest.

I.C. § 37–2744 protects the interests of *bona fide* encumbrancers in § 37–2744(a)(4)(D) and in § 37–2744(d)(3)(D)(IV). The statute provides that a party claiming an interest under a lien may show that the lien "was created without any knowledge or reason to believe that the conveyance was being or was intended to be used for the purpose charged." I.C. § 37–2744(d)(3)(D)(IV) (1984). In adopting the forfeiture statute, the legislature sought to attack the economic aspects of crimes and to prevent illicit use of property. Once seizure has taken place, this goal has been satisfied. It would be illogical, and would frustrate the legislative policy to hold that an owner of seized property has the option of encumbering that property and thereby benefitting economically by cutting off the state's forfeiture rights.

In this case there are two innocent parties, the state and the bank. The state followed all of the required procedural obligations under I.C. § 37–2744. The car was seized, and notice was given to all parties who had an existing interest in the car at the time of seizure. The bank did not obtain its interest in the property until twenty days after seizure. By adopting the date of seizure rule, the harshness of the *Stowell* rule is mitigated and the purposes and policies behind the law are protected. Criminals will not be able to avoid forfeiture by borrowing against their property after seizure. Lenders will be protected against pre-seizure situations where it would be impossible to protect themselves. They can protect themselves from post-seizure difficulties if they take the step of inspecting collateral before issuing loans. The burden on the bank is minimal—they simply must inspect collateral. Such an inspection in this case would have protected the bank because they would have discovered that the car had been seized and was in police custody, and therefore Thompson's title was questionable. We hold that once the state has *seized* property

pursuant to I.C. § 37–2744 a third party cannot get a lien interest in the seized property which is protected by the statute.

### III

■ Having determined that the Porsche belonged to the state on the day it was seized, we now address the bank's claim that the state's appeal was moot. The bank argues that because the car was released to the bank and was subsequently sold by the bank, there was no controversy to decide on appeal. However, the state had paramount title to the Porsche, as we have held in Part II, and as a result a title dispute existed between the state and the bank. By selling the Porsche, a justiciable issue of conversion existed between the state and the bank. Accordingly, the case is not moot.

The judgment of the district court is reversed. Costs to appellant.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

The Court today engages in an impermissible rewriting of I.C. § 37–2744. I can agree with neither the reasoning nor most of the rationale of the majority. In addition, the result achieved in this case is manifestly unfair to the bank and therefore, I dissent.

### I.

The majority sets the stage to reach its desired result wherein it states that "[t]he central issue in this case is one of statutory construction." *Ante* at 433, 732 P.2d at 671. The opinion conveniently omits the first question in any judicial analysis of a statute—is the statute ambiguous? The Court may engage in construction of the statute only if the answer is "yes." This well-settled principle was enunciated by Chief Justice Donaldson just the other day:

"This Court has consistently adhered to the primary cannon of statutory construction that where the language of the statute is unambiguous, the clear ex-

pressed intent of the legislature must be given effect and there is no occasion for construction." *Worley Highway District v. Kootenai County,* 98 Idaho 925, 928, 576 P.2d 206, 209 (1978). *Ottesen v. Board of Commissioners of Madison County,* 107 Idaho 1099, 1100, 695 P.2d 1238, 1239 (1985).

The statute in question, I.C. § 37–2744, provides that materials used to violate Idaho's Uniform Controlled Substances Act are subject to forfeiture to the state. The statute in effect at the time of trial made a clear distinction between the drugs themselves and vehicles used in the crime:

(d) Property taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the director subject only to the orders and decrees of the district court, or magistrate's division thereof, having jurisdiction over the forfeiture proceedings. Forfeiture proceedings shall be civil actions against the property subject to forfeiture and the standard of proof shall be preponderance of the evidence.

(1) All property described in paragraph (1) [controlled substances] of subsection (a) hereof shall be deemed contraband and shall be **summarily forfeited** to the state. Controlled substances which are seized or come into possession of the state, the owners of which are unknown, shall be deemed contraband and shall be **summarily forfeited** to the state.

(2) When property described in paragraph (2), (3), (4) [vehicles], (5) and (6) of subsection (a) hereof is seized pursuant to this section, forfeiture proceedings shall be filed in the office of the clerk of the district court for the county wherein such property is seized. The procedure governing such proceedings shall be the same as that prescribed for civil proceedings by the Idaho Rules of Civil Procedure. *The court shall* **order the property forfeited to the director if he determines** *that such property was used, or intended for use, in violation of this act.* I.C. § 37–2744(d)(1)(2) (emphasis added).

Thus, the statute makes plain and unambiguous that drugs are forfeited *summarily* at the time of seizure while the forfeiture of vehicles requires and follows only after an adjudication. The statute twice provides further that following an adjudication of forfeiture, the state's interest in the vehicle remains subject to that of innocent lien holders:

(D) A forfeiture of a conveyance encumbered by a bona fide security interest is subject to the interest of the secured party if he neither had knowledge of or reason to know nor consented to the act or omission. I.C. § 37–2744(a)(4)(D).

(IV) An owner, co-owner or claimant of any right, title, or interest in the conveyance may prove that his right, title, or interest, whether under a lien, mortgage, conditional sales contract or otherwise, was created without any knowledge or reason to believe that the conveyance was being or was intended to be used, for the purpose charged; .... I.C. § 37–24774(d)(3)(D)(IV).

Thus, the legislature had this distinction clearly in mind: drugs are forfeited when seized; vehicles not so; a court determination is a condition precedent. With the statute containing no language capable of being read that vehicles are forfeited upon seizure, the thoughtful analysis engaged in by Justice Bakes, although it commands a majority, has no supporting initial predicate upon which to build.

Federal case law is given discussion as though it is somehow entitled to great weight on this issue. Conspicuously absent are any quotations of the statutes at issue in those federal cases. Unless the statutes are substantially similar to our I.C. § 37–2744, the cases are entitled to little, if any, weight.

The parallel federal provision is 21 U.S.C. § 881. On the crucial points, it is dissimilar to our I.C. § 37–2744. The statute begins with the words "The following shall be subject to forfeiture to the United States *and no property right shall exist in them* ...." (Emphasis added.) Congress granted no rights to vehicle lienholders. There

are no provisions similar to I.C. § 37–2744(a)(4)(D) or (d)(3)(1)(IV).

However, in 1984 the statute was amended to provide relief for innocent lienholders with regard to real property, 21 U.S.C. § 881(a)(7), but not vehicles. At all times the federal law has provided for remission or mitigation of forfeitures within the discretion of the Attorney General. 21 U.S.C. § 881(d).

Significantly, a new section was added in 1984 which provides that: "All right, title, and interest in property described in subsection (a) shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 881(h). Essentially, this is a codification of the *Stowell* rule. Thus, it is apparent that the federal statute is so dissimilar to Idaho's provision that the federal cases provide little guidance.

The cite to the *Crampton* case, *ante* at 435, 732 P.2d at 673, provides little persuasion. The precedential value of a plurality position by a three-member panel of the Oregon Court of Appeals even in Oregon is not of great strength.

While we do not disagree with the majority that a salutory purpose of the statute is the prevention of criminals from profiting in criminal conduct, this laudable rationale is inapplicable to this case. The car was transferred from Stephenson, the one arrested for selling cocaine, to Thompson five weeks before Stephenson was arrested. The state's forfeiture complaint never once mentioned Thompson's name. Thus, no criminal will profit if the Bank's lien on Thompson's car is recognized. On the contrary, the majority's infliction of a penalty upon the Bank has not the slightest deterrent value on illegal drug trafficking. The purpose of forfeiture statutes is to impose a penalty only upon those who are significantly involved in a criminal enterprise. *United States v. One 1967 Porsche*, 492 F.2d 893, 894 (9th Cir.1974), *citing United States v. United States Coin & Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). In *United States Coin & Currency*, the Court stated that a statute that

allows property of an innocent to be forfeited might raise serious Fifth Amendment questions. 401 U.S. 715, 721–22, 91 S.Ct. at 1044–45.

The majority's attempted rationalization is that: "We do not believe that the legislature intended to allow a third party to get an interest (post-seizure) that is stronger than the state's interest." *Ante* at 436, 732 P.2d at 674. Such is pure whimsical fancy as to how the majority would have written the legislature's law, and how the statute can be misread to come up with the "better" result, which is simply: Bank loses; State wins.

## II.

Although the majority opinion gives it no specific recognition, it is apparently influenced by Part III of the state's opening brief which is predicated upon the principle that where one of two innocent parties must suffer, the loss must be borne by the one whose act caused the loss. This is somewhat disconcerting in view of *Hunsaker v. Rhodehouse*, 77 Idaho 119, 289 P.2d 319 (1955), wherein the principle was discussed at length. That case contained what might be considered a more explicit, more complete statement of the principle by which the state contends we should be guided: "wherever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." *Hunsaker, supra,* 77 Idaho at 125, 289 P.2d at 323.

Borrowing from the language of the Utah Supreme Court, this Court stated the principle in slightly different language:

> Where one of two innocent parties must suffer from wrongful act of third person, loss should fall on one who by his conduct, created circumstances which enabled third party to perpetrate wrong and cause loss. *Id.*

The circumstances of this case simply do not present an occasion for the application of the principle. As is made quite clear from our own Idaho cases, and by the text, 27 Am.Jur.2d §§ 146, 147 (to which we are cited in the state's brief): "This principle does not apply where there are no contending equities between the parties." 27 Am. Jur.2d, p. 683. The principle applies most usually where the conflicting claims arise where both losing parties have dealt with and trusted the same miscreant—often an agent for both, as in the *Hunsaker* case, and more recently in *Blankenship v. Myers,* 97 Idaho 356, 544 P.2d 314 (1975), where the Blankenships and Myers dealt through an agent who converted assets of one of the parties to a real estate transaction, and the agent could respond to neither, having been for other activity awarded a life sentence in a federal penitentiary.

In the case which was presented to Judge Durtschi, the state of Idaho and the Bank had no dealings with each other, none directly, and none with Stephenson. Stephenson had no dealings with the state, other than to violate its laws. Thompson's transaction with the Bank was a simple, ordinary loan transaction—the fourth which he had with the same bank. The Bank acquired a lien on the Green Porsche. The state of Idaho eventually obtained a decree of forfeiture—which all concede is valid against Stephenson's interest in the vehicle.[1]

The state's argument is in and of itself self-destructive, and runs contra to the majority's novel hypothesis. At page 26 of its brief, it asserts: "Although the bank may have had no knowledge of the illegal use of the vehicle when the $8,000 loan was made to Thompson, it was within the bank's power to determine that the vehicle was in the custody of the police and subject to forfeiture to the state." To which it adds on page 27: "The bank's failure to request a view of the collateral or even to attempt to determine where it was located contributed to the fraudulent activities of Thompson." Yet, earlier in its brief, it candidly has first conceded the state of the law, generally and in Idaho:

---

1. Nothing in the record implicates Thompson in      the commission of Stephenson's drug offense.

However, in many jurisdictions statutory protection has been afforded to holders of innocent interests in property subject to forfeiture. Congress indicated an intent to protect "bona fide purchasers" throughout the above-cited congressional report on the 1984 amendments to the federal forfeiture statutes. [1984] *U.S. Code & Ad.News* at 3384.

The Idaho legislature has elected to protect the interests of holders of bona fide security interests in conveyances subject to forfeiture (aircraft, vehicles, or vessels) upon fulfillment of certain conditions, as shown by Idaho Code § 37–2744(a)(4)(D):

> (D) A forfeiture of a conveyance encumbered by a bona fide security interest is subject to the interest of the secured party if he neither had knowledge of or reason to know nor consented to the act or omission.

Under this provision a bona fide security interest is protected under the following conditions:

> a) if the subject conveyance was encumbered by such interest at the time of forfeiture;
>
> b) if the holder of the interest had no knowledge or *reason to know* of the illegal activity;
>
> c) if the holder of the interest did not consent to the act or omission.

There is no contention made here the First Security Bank in any way consented to or had knowledge of the illegal acts involving the Porsche Targa. However, because the vehicle was not encumbered by the bank's interest when forfeiture occurred, and **because the bank had reason to know that the vehicle had been forfeited when its lien interest was established,** the bank's interest fails to qualify for protection under the statute; thus, the district court erred in its ruling that the bank's interest should prevail over the state's forfeiture interest in the Porsche Targa. Appellant's Brief, pp. 14–16 (italics original; bold emphasis added).

The portion of the excerpt from Appellant's Brief which is italicized above is apparently thought to be sustained by the bare assertions from pages 26 and 27 of its brief, *supra,* p. 16.

The Bank innocently loaned money on the vehicle—and, were it to sustain a loss, would be an innocent party defrauded by Thompson. The state of Idaho did no business with Thompson and was not defrauded by him. By reason of Stephenson's violations of law, the state had an expectancy to the windfall of acquiring the Green Porsche—which failed to materialize, perhaps by reason of its failure to circularize all local banks with a notice that the director was in possession of the vehicle and that forfeiture proceedings had been or would be instituted. Such a procedure may or may not be feasible in the eyes of the director.

The main point to be remembered, however, is that it is only the Bank which parted with any money in a standard business transaction, and stands to suffer a loss of it. The state stands to suffer the loss of a windfall—but there will be other windfalls, and criminal activity in drugs may be deterred.

Finally, one should keep in mind the state's frank concession of legislative policy seeking to protect lending institutions—not punish them. The deterrent value of today's majority opinion remains to be seen. The only class capable of being deterred by today's opinion are the various lending agencies in Idaho, even though guiltless of crime or suspicion of crime. *O, tempore, o mores.*

### ON DENIAL FOR REHEARING

#### BISTLINE, Justice.

I am unable to understand the majority's summary denial of a rehearing. In his brief supporting a petition for rehearing, counsel for the Bank included an excellent discussion of the likely real-world effects of the majority opinion on the banking industry. Particularly telling is the following discussion of the public cloud that is

now upon every motor vehicle title in Idaho:

> Really, the Bank has been blindsided. Notwithstanding the clear title before it, had the Bank consulted with an attorney about the risks it might be taking under the forfeiture laws in not viewing the collateral, there is every likelihood that the Bank would have been assured that its lien interest would be safe, given the language of I.C. § 37–2744 and the available decisions interpreting similar forfeiture statutes.

> The Court suggests that the Bank could have avoided its current dilemma and, in the future, will be able to protect itself from post-seizure difficulties by inspecting collateral before issuing loans. Certainly, if the court denies rehearing of this decision, or upholds its decision upon rehearing, it would be safe to say that there will not be a lending institution in Idaho which does not make inspection of vehicles, or other conveyances offered as collateral, mandatory, regardless of crystal clear title in its customers. It is important for the Court to recognize in this regard that if divestiture of title is to occur at the moment of seizure, lending institutions will no longer be able to rely upon any title, even though on its face and according to Department of Motor Vehicle records, it is without any cloud whatsoever. As things now stand, there is no requirement that the fact of seizure be publicly disseminated and thus there is nothing to put a lender on notice that it may be. making a post-seizure loan.

The Bank's counsel thus brings into focus one of the problems created by a majority opinion that rewrites a statute to obtain the majority's desired result. Many of the legislature's specific measures designed to protect innocent lienholders have gone by the board.

The majority has wholly failed to address the important legal discussion—not my own thinking of what the law should be, but what it is—set out at length in my earlier effort. One learns to live with that

indifference. Now, responsive to counsel's petition, the majority remains equally silent.