UNITED STATES of America, Plaintiff,

v.

ONE 1975 CHEVROLET K–5 BLAZER, VEHICLE IDENTIFICATION NUM-BER, CKY185F135794, Defendant.

No. G77–50 CA1.

United States District Court,
W. D. Michigan, S. D.

Aug. 12, 1980.

Robert Greene, Asst. U. S. Atty., Grand Rapids, Mich., for petitioner.

John Patrick Apol, Farmington Hills, Mich., for defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

The United States brings this petition for forfeiture of a vehicle under the almost identical provisions of 49 U.S.C. § 782[1] and 21 U.S.C. § 881.[2] The Government has moved for summary judgment. Because the use of the libelled vehicle within the terms of these statutes was established by former adjudication, the Court is of the opinion that the Government's motion should be granted, and the vehicle be forfeited to the United States.

## I. FACTS

The contested Chevrolet Blazer was stopped, searched and seized by Government agents, as part of a larger drug surveillance and interception operation, on 20 November 1976. It was then owned and driven by Thomas Junghans, who with Alan Apol was indicted on 16 December 1976 for unlawful possession, with intent to distribute, of approximately 2,040 pounds of marihuana, in violation of 21 U.S.C. § 841(a)(1). Both Junghans and Apol were later adjudged guilty of the charged offense in a bench trial before Judge Wendell Miles of this District. *United States v. Junghans,* No. G76–219 Cr.1 (W.D.Mich.1977). On 6 December 1976, Junghans transferred his interest in the Blazer (along with other property and monies) to one John Patrick Apol (hereinafter referred to as "Apol") in

1. 49 U.S.C. § 782 provides in relevant part: Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited:

21 U.S.C. § 881 provides in part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.

(2) All raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this subchapter.

(3) All property which is used, or intended for use, as a container for property described in paragraph (1) or (2).

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2), except that—

(A) no conveyance used by any person as a common carrier in the transaction of business as a common carrier shall be forfeited under the provisions of this section unless it shall appear that the owner or other person in charge of such conveyance was a consenting party or privy to a violation of this subchapter or subchapter II of this chapter; and

(B) no conveyance shall be forfeited under the provisions of this section by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such conveyance was unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States, or of any State.

2. 49 U.S.C. § 781 provides in relevant part:

(a) It shall be unlawful (1) to transport, carry, or convey any contraband article in, upon, or by means of any vessel, vehicle, or aircraft; (2) to conceal or possess any contraband article in or upon any vessel, vehicle, or aircraft, or upon the person of anyone in or upon any vessel, vehicle, or aircraft; or (3) to use any vessel, vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article.

consideration of the latter's "past legal services and future legal services." (The District Clerk's records indicate that Apol had appeared as counsel for both defendants at the initial presentment conducted on 22 November 1976.) The "Agreement of Assignment" was duly filed that day with the U.C.C. Division of the Michigan Secretary of State's Office.

Junghans and Apol have filed notices of claimed interest in the Blazer, and contest forfeiture to the United States. Junghans' Notice was submitted "by and through his authorized agent and attorney," Apol; absent any sign that this relationship has terminated, the Court will construe all material presented by Apol to be on behalf of both claimants. In his Notice, Apol asserts that he took his interest in the Blazer before Junghans received notice of seizure postmarked 6 December 1976; and that at the time, he had no "notice or knowledge of the attempted forfeiture." The claimants do not question the validity of the criminal conviction.

## II. ELEMENTS OF FORFEITURE

█ For an order of forfeiture to issue, the Government need only make a showing of *probable cause* to believe that the vehicle was used in violation of the forfeiture statutes. The standard of "probable cause" applied in forfeiture proceedings is the same as that familiarly employed to test searches and seizures under the Fourth Amendment. *United States v. One 1975 Mercedes 280S*, 590 F.2d 196, 199 (6th Cir. 1978). It is "a reasonable ground for belief of guilt supported by less than prima facie proof but more than mere suspicion." *United States v. One 1975 Ford Pickup Truck*, 558 F.2d 755, 756 (5th Cir. 1977). If the Government succeeds in this showing, the burden of proof shifts to those claiming the property to demonstrate either that the facts are otherwise, or that the forfeiture law does not apply to the activity. A district court may properly make these deter-

minations upon motion for summary judgment, should that be appropriate. *United States v. One 1975 Mercedes 280S*, 590 F.2d at 199.

█ A vehicle may be forfeited under the statutes that the Government invokes if, *inter alia*, it has been used "to facilitate," 21 U.S.C. § 881(a)(4), or "in any manner to facilitate," 49 U.S.C. § 781(a), the transportation or sale of marihuana. Intentional transportation or concealment of the substance in a vehicle, no matter how small the amount, will subject the conveyance to forfeiture.[3] Contraband need not be physically present within the vehicle, however; if the conveyance is used as a place for negotiating or conducting a sale, or as a lookout or decoy vehicle in a convoy, it will still be forfeited. *United States v. One 1972 Datsun*, 378 F.Supp. 1200, 1202 (D.N.H.1974) (collecting cases).

## III. PROPRIETY OF COLLATERAL ESTOPPEL

█ The Government seeks to substantiate its allegation that the Chevrolet Blazer "was used to faciliate the transportation, concealment, receipt, possession, purchase, sale, barter or exchange of marihuana" by relying on the adjudicated facts contained in Judge Miles' Opinion and Verdict in *United States v. Junghans*, entered 7 December 1977. The Government makes no attempt to justify its implicit reliance on the doctrine of collateral estoppel in this case. The claimants, for their part, tacitly assume that the doctrine is applicable, and question only whether its elements are present. They do not present their own version of the events leading up to seizure of the Chevrolet Blazer; they merely argue that the guilty verdict in *United States v. Junghans* did not finally and necessarily determine the facts relied upon by the Government. The Court is of the opinion that the Government may, in proper circumstances, rely upon the facts adjudicated in a prior criminal trial to establish the probable cause required for forfeiture.

---

**3.** Even the presence within the vehicle of a small amount of marihuana, strictly for personal consumption, will justify forfeiture. *United States v. One 1973 Dodge Van*, 416 F.Supp. 43, 46–47 (E.D.Mich.1976) (10.3 grams).

The doctrine of collateral estoppel postulates that an issue of ultimate fact which has been determined by a valid and final judgment on the merits should not and cannot be relitigated between the same parties in any future lawsuit. Restatement of Judgments § 1 (1942). It simultaneously serves the public interest in judicial economy, and the parties' interest in finality and repose. Although developed in civil litigation, the doctrine has expanded to give binding effect to ultimate facts established in a criminal trial. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). Thus, a criminal conviction works an estoppel in favor of the United States in subsequent civil proceedings as to those matters determined by the criminal judgment. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 157, 83 S.Ct. 554, 561, 9 L.Ed.2d 644 (1963); *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568–69, 71 S.Ct. 408, 413–14, 95 L.Ed. 534 (1951); *Rimmer v. Fayetteville Police Department*, 567 F.2d 273, 276 (4th Cir. 1977); *Cardillo v. Zyla*, 486 F.2d 473, 475 (1st Cir. 1973); *Plunkett v. Commissioner of Internal Revenue*, 465 F.2d 299, 305 (7th Cir. 1972); *Tomlinson v. Lefkowetz*, 334 F.2d 262, 264 (5th Cir. 1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965); *United States v. Cripps*, 460 F.Supp. 969, 975 (E.D. Mich.1978) (Kennedy, C. J.).[4] Indeed, the rigorous procedural safeguards, the importance of the cause to the accused, and the heavy burden of proof carried by the Government tend to ensure that facts adjudicated in a verdict of criminal guilt are highly reliable. A convicted criminal defendant has been adjudged guilty beyond a reasonable doubt, and *each element* of the offense charged against him has also been established beyond a reasonable doubt. *Moore v. United States*, 429 U.S. 20, 22, 97 S.Ct. 29, 30, 50 L.Ed.2d 25 (1976). In contrast, a civil verdict may issue on only preponderance of the evidence, and an order of forfeiture may issue upon a showing of mere probable cause. An estoppel will arise whether the criminal conviction was entered upon jury verdict or guilty plea, *United ed States v. Podell*, 572 F.2d 31, 35 (2nd Cir. 1978) (Kaufman, C. J.); the Court perceives no reason to distinguish a verdict of guilt entered in a bench trial.[5]

The elements requisite to estoppel by judgment are well-established in federal jurisprudence. A prior adjudication will give rise to an estoppel when the issue there determined 1) is identical to that involved in the subsequent action; 2) was actually litigated in the earlier action; and 3) was necessary and essential to a final judgment on the merits. *United States v. School District of Ferndale*, 577 F.2d 1339, 1349 (6th Cir. 1978); *Cream Top Creamery v. Dean Milk Co.*, 383 F.2d 358 (6th Cir. 1967); 1B Moore's Federal Practice ¶ 0.441[1] *et seq.* (2d ed. 1974). *See generally Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Restatement of Judgments § 68 (1942); Kelly & Rothenberg, The Offensive Use of Collateral Estoppel in Suits Against Public Agencies, 13 U.Mich.J.L.Ref. 303 (1980). "An issue is a single, certain and material point arising out of the allegations and contentions of the parties." *Paine & Williams Co. v. Baldwin Rubber Co.*, 113 F.2d 840, 843 (6th Cir. 1940). If a general jury verdict has been rendered, the issue may be determined by examining the entire

---

**4.** The Government may not relitigate those facts necessarily determined by an acquittal in a second prosecution of a criminal defendant. *Ashe v. Swenson* 397 U.S. at 443–44, 90 S.Ct. at 1194. Because of the greater burden of proof in a criminal trial, however, a criminal acquittal does not preclude relitigation of a factual matter in a later *civil* action brought by the Government. *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972).

**5.** Indeed, the judge's special findings of fact, which may be requested under Fed.R.Crim.P. 23(c), facilitate the later determination of those issues which have been foreclosed. Judge Miles' Opinion and Order in the criminal case here under scrutiny serves this purpose.

record of the prior proceeding. *Ashe v. Swenson*, 397 U.S. at 444, 90 S.Ct. at 1194; *Emich Motors Co. v. General Motors Corp.*, 340 U.S. at 569, 71 S.Ct. at 414. The inquiry " 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' " *Ashe v. Swenson*, 397 U.S. at 444, 90 S.Ct. at 1194 quoting *Sealfon v. United States*, 332 U.S. 575, 579, 68 S.Ct. 237, 239, 92 L.Ed. 180 (1948). Of course, the written opinion of the judge presiding at a bench trial will often explicitate the material issues of fact necessarily adjudicated. Even with the benefit of a written verdict and opinion, however, inspection of the trial record may still be required. Necessary determinations may also be discerned by inference from the conclusions reached by the earlier court. 1B Moore's Federal Practice ¶ 0.442[4] (2nd ed. 1974).

▮▮▮▮ Whether the party relying on collateral estoppel wields it as "shield," *see Blonder-Tongue Labs*, or as "sword," *see Parklane Hosiery*, due process forbids that an opponent be collaterally estopped if he did not have a chance to litigate the issue in a prior action. *Blonder-Tongue Labs*, 402 U.S. at 329, 91 S.Ct. at 1443. Claimant Junghans, of course, was a party-defendant in the criminal case on which the Government relies. He not only had the opportunity to present argument and evidence on

the factual questions there at issue, but, as revealed in the District records, availed himself of it to mount a spirited defense. Under such circumstances, it is not inappropriate to bind him to the findings of fact produced by the former action. *Parklane Hosiery*, 439 U.S. at 331–33, 99 S.Ct. at 651–52.[6]

## IV. FACTS PRECLUDED BY PRIOR ADJUDICATION

▮▮▮▮ In his Opinion and Verdict of 7 December 1977, Judge Miles determined that the defendants before him were guilty of possession, with intent to distribute, of more than a ton of marihuana, in violation of 21 U.S.C. § 841(a)(1). In order to reach this result, Judge Miles found that all three elements of the offense were established beyond a reasonable doubt. These are: 1) possession of marihuana; 2) specific intent to distribute it; and 3) knowing and intentional possession with intent to distribute. Opinion and Verdict, at 3. The claimants insist that the factual question of the presence of some 31 grams of marihuana in the Blazer was not raised, litigated, or necessary to any of Judge Miles' conclusions.[7] The Court need not pause to consider their argument, however, for the necessary inference of the factual findings reported in the Opinion and Verdict is that the Blazer was used to facilitate the transportation of marihuana.

**6.** The claimants argue that "the defendant Blazer" was not a "party" to the criminal case, and so may not now be collaterally estopped. Brief in Opposition to Motion for Summary Judgment, at 1. This formalistic analysis must be rejected. As *United States v. United States Coins & Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) (Harlan, J.), makes clear, the historical accident that forfeiture actions are styled *in rem* must not mask the reality that a person owns the contested property. The relevant inquiry is thus whether the *claimant* was a party to a prior suit, not the chattel.

**7.** Although indicted, in Count 1, for possession with intent to distribute, and in Count 2 for conspiracy to do so, the defendants were tried only under Count 1. Count 2, later dismissed upon the Government's motion, contained a detailed summary of the culpable events and search results, including the discovery of 31 grams on Junghans' person, and about 2,000 grams in his residence. Count 1, by contrast,

read in its entirety: "That on or about the 20th day of November, 1976, in the Southern Division of the Western District of Michigan, THOMAS GIRARD JUNGHANS, and ALAN PETER APOL, knowingly and intentionally did unlawfully possess with intent to distribute approximately 2,040 pounds of marihuana, a Schedule I controlled substance." Claimants argue that possession of the 31 grams was irrelevant under the language of Count 1. An indictment, however, is to be read as a whole, and given a practical, not technical, interpretation. *United States v. Smith*, 523 F.2d 771, 779 (5th Cir. 1976); 1 C. Wright, Federal Practice & Procedure § 125 (1969). It is patent that the allegations of Count 2 applied as well to Count 1, and so were properly at issue in the trial. Substantial testimony was devoted to the events alleged in Count 2 without objection from the defense on the grounds of relevance or variance.

In Part IIIA(2) of the Opinion, Judge Miles sets forth the facts which supported his conclusion that Junghans had been in possession of the marihuana, the first element of the offense charged. These facts are reproduced in the margin.[8] Each inculpatory fact was uncovered as a consequence of searching the Blazer and its driver, Junghans, on 20 November 1976, and necessarily assumes the underlying facts of the search that night. As spread upon the trial record, the incontestible factual finding is that the Blazer had been travelling in a convoy with a Ryder rental truck laden with approximately 2,040 pounds of marihuana. See Trans. at 23–24 (Testimony of Richard Robbins); Opinion on Defendants' Motions to Suppress at 2–6 (June 17, 1977). In addition, defendants Junghans and Apol stipulated, with the consent of Judge Miles, that "the 2,040 pounds of vegetable matter seized on November 20, 1976, was and is marijuana." Opinion and Verdict, at 2. This, too, presupposed the circumstances surrounding the seizure.[9]

The facts established in Part IIIA(2) properly give rise to a collateral estoppel. 1) The factual issue is the same: the presence of the Blazer in the marihuana convoy. 2) The issue was actually litigated. Witnesses were presented and examined about the interception and search of the Blazer. 3) The issue was necessary to the result. Although the criminal charge involved the fruits of the search, the mediate data about the search itself was logically requisite to the ultimate facts relied upon. Claimant Junghans is therefore estopped from denying that the Blazer escorted another vehicle which carried marihuana. Such use constitutes "facilitation" of the transport of contraband. The Government thus not only presents probable cause, but adduces a finding which may not be denied, that the Blazer was used within the scope of the forfeiture laws. Because there can be no dispute of material fact, summary judgment against claimant Junghans is compelled by Fed.R.Civ.P. 56(c).[10]

8. Part IIIA(2) of the Opinion and Verdict of 7 December 1977:

*(2). Defendant Junghans*

At the time of Mr. Junghans' arrest, approximately thirty-one grams of marijuana were found on his person. A subsequent search of his residence resulted in the discovery of approximately three pounds of marijuana and various packaging materials. These discoveries constitute possession as to these amounts.

In addition, Mr. Junghans' residence was the site of the unloading of the Ryder rental truck on November 20, 1976, and he accompanied it in a Chevrolet Blazer from the time it left his residence to the time of its apprehension. In [*United States v. Gomez, supra*] these activities were deemed constructive possession of the marijuana in the truck.

Furthermore, at the time of his arrest, defendant Junghans was in possession of and surrendered to a DEA agent the key to the padlocked cargo area of the truck, in which the marijuana was found. Possession of a key constitutes control and dominion over a vehicle and its contents and hence possession. *United States v. Heiden*, 508 F.2d 898 (9th Cir. 1974). [*United States v. White, supra*]. Accordingly, the element of possession is satisfied as to Mr. Junghans.

9. If the claimants are correct in their argument that Judge Miles' findings as to the 31 gram and 3 pound quantities should be disregarded, the factual conclusion of Part IIIA(2) would then rest on Junghans' constructive possession of the Ryder truck, and his escort of it, while in

the Blazer. These facts directly support the Court's conclusion that the Blazer was employed to facilitate transportation of contraband.

10. In answer to the forfeiture complaint, the claimants raise three affirmative defenses: 1) the Controlled Substances Act is unconstitutional, and no contraband could therefore have been in the Blazer; 2) the defendant (i. e., the Blazer) was denied due process of law, presumably by seizure without notice and hearing; and 3) there is no legal evidence of contraband. The affirmative defenses are nowhere elaborated upon. The first and third, however, were raised by the defendants in the criminal case before Judge Miles. The former's attacks on fifth and eighth amendment grounds were considered and rejected in the Opinion and Order of 19 August 1977. The Court neither perceives nor is presented with any reason to reconsider Judge Miles' analysis, which is in accord with the overwhelming weight of authority. Moreover, the Court does not here rely on the presence of contraband in the Blazer, but rather the Blazer's use as an escort vehicle. The latter also merely reiterates objections to the search of the Blazer previously rejected by Judge Miles in his Opinion on Defendants' Motions to Suppress of 17 June 1977. The second affirmative defense has been rejected by the Supreme Court in *Pearson Yacht Leasing*, 416 U.S. at 676–81, 94 S.Ct. at 2088–2090.

■ Because the Blazer is deemed forfeited to the Government as of the time it was improperly used, the subsequent transfer to Apol is of no effect. He is therefore without an interest in the vehicle, and summary judgment must also be entered against him.

"[W]henever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed, and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith."

*United States v. Stowell,* 133 U.S. 1, 17–18, 10 S.Ct. 244, 247–48, 33 L.Ed. 555 (1890), *favorably discussed in Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 685, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452 (1974). This principle of forfeiture law is as ancient as it is harsh, but it is of continuing vitality. *See United States v. 1,960 Bags of Coffee,* 12 U.S. (8 Cranch) 398, 417, 3 L.Ed. 602 (1814); *Simons v. United States,* 541 F.2d 1351 (9th Cir. 1976); *United States v. One 1967 Chris-Craft 27 Foot Fiber Glass Boat,* 423 F.2d 1293 (5th Cir. 1970). Apol's only avenue of relief is one he has already followed: petition the Secretary of the Treasury for remission or mitigation of forfeiture. 21 U.S.C. § 881(d); 19 U.S.C. § 1618; 19 C.F.R. § 171 (1979).

MOTION FOR SUMMARY JUDGMENT GRANTED.