**In re Interrogatories of the U.S. District Court: UNITED STATES of America, Plaintiff,**

v.

**Gerald H. WILKINSON, First National Bank of Boulder, and The County of Boulder, State of Colorado, Defendants.**

**No. 82SA472.**

Supreme Court of Colorado, En Banc.

Aug. 27, 1984.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Carleton D. Powell, Robert Horwitz, Attys., Tax Div., Washington, D.C., for plaintiff; Robert Miller, U.S. Atty., Denver, of counsel.

Hutchinson, Black, Hill, Buchanan & Cook, William D. Meyer, Peter M. Van Zante, Boulder, for defendant, County of Boulder.

ROVIRA, Justice.

The following question of law was certified to this court by the United States District Court for the District of Colorado in accordance with C.A.R. 21.1:

> What is the nature and extent of the property interest, if any, retained by a person subsequent to the seizure of his property pursuant to § 16–13–303, C.R.S. 1973, as effective on June 13, 1980, but prior to a judicial determination pursuant to § 16–13–309 et seq., C.R.S.1973?

We hold that a person is divested of all rights and interests in property upon its seizure under the Colorado Abatement of Public Nuisance statute (Public Nuisance

statute), sections 16–13–301 to –316, 8 C.R.S. (1978 & 1983 Supp.). Therefore, our answer to the certified question is that there is no property interest retained during the period in question.

The case in the federal court which caused the question to be certified to us arose out of the seizure and forfeiture of personal property pursuant to the Public Nuisance statute. The facts presented by the certification order are as follows: On June 11, 1980, approximately $605,000 in cash, sixteen precious gems, over 300 pounds of marijuana, and other narcotics were discovered by officers from the Boulder County Sheriff's Department during their investigation of a shooting at a residence owned by Gerald H. Wilkinson. The following day the County of Boulder filed a civil action pursuant to section 16–13–303 in Boulder County District Court seeking seizure and forfeiture of the property discovered at Wilkinson's residence. At a hearing held on June 13, 1980, the trial court entered a temporary restraining order pursuant to section 16–13–308, directing the Boulder County sheriff to seize the property. The order was carried out on that date.

The United States, acting through the Internal Revenue Service, Denver District, learned of the seizure from newspaper reports published in the Denver metropolitan area. After obtaining further information concerning the seizure and Wilkinson's activities, the United States made a termination assessment against Wilkinson on June 18, 1980.[1] On June 19, 1980, a Notice of Federal Tax Lien based on this termination assessment was filed with the Clerk and Recorder of Boulder County.

On October 14, 1980, the Boulder County District Court entered an order *nunc pro tunc* to the date of seizure, June 13, 1980,

forfeiting the property to Boulder County as of that date. The United States then filed an action in the United States District Court for the District of Colorado seeking to foreclose the federal tax lien that had been filed after the seizure of Wilkinson's property.

The United States asserts that Wilkinson's property interests in the seized property did not terminate until the trial court's final order of October 14, 1980, and that its lien filed on June 19, 1980, has priority over the interest of Boulder County. The County contends that Wilkinson's property interests terminated prior to June 19, 1980, and the lien claimed by the United States is therefore defeated. The question was certified to this court by the United States District Court because there is no controlling precedent in Colorado case law on this issue.

I.

State law determines the nature and extent of the legal interest held by a taxpayer in property upon which the federal government seeks to attach a lien to enforce revenue statutes. *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). Colorado has no general forfeiture statute applicable to personal property possessed or used in connection with criminal activity. There are, however, forfeiture provisions applicable to specific situations.[2] The Public Nuisance statute is one such statute: "The fixtures and contents of any building or structure which is a class 1 public nuisance ... are subject to seizure, confiscation and forfeiture as provided in this [statute]...." § 16–13–303(2).

The statute sets out the procedure to be followed in the seizure and forfeiture of nuisance-related property. Section 16–13–

---

1. This assessment was in the amount of $2,331,-675.55 for taxes from January 1, 1980, to June 30, 1980. The assessment was challenged by Wilkinson in the United States District Court for the Eastern District of Wisconsin, and was subsequently reduced to $700,000 by order of the court dated October 21, 1980.

2. *See, e.g.,* § 18–10–104, 6 C.R.S. (1983 Supp.) (confiscation and destruction of gambling devices, records, and proceeds); § 33–6–137, 14 C.R.S. (1973) (abatement as public nuisance for illegally used seines, nets, traps, etc.); § 35–9–110, 14 C.R.S. (1973) (confiscation of adulterated or misbranded pesticides).

308(1) provides for the issuance of a temporary restraining order to "abate and prevent the continuance or recurrence" of a class 1 nuisance upon a showing of its existence to the satisfaction of the court. An order issued under this section "may direct the seizure of any personal property subject to seizure, confiscation and forfeiture...." Under section 16–13–309(2), "[i]f the existence of a class 1 nuisance is established, ... an order of abatement shall be entered as a part of the judgment in the case, which order shall direct ... the confiscation and forfeiture of all personal property seized ... as provided in section 16–13–303(2) ...." Finally, existing liens are protected by section 16–13–316, which states:

> "Nothing in this [statute] shall be construed in such manner as to destroy the validity of a bona fide lien upon ... personal property appearing of record prior to the seizure of personal property ... as authorized under this [statute]."

The statute does not include any similar provision for liens appearing of record after the seizure of personal property.

The trial court's final order concerning the forfeiture of the property at issue here was entered *nunc pro tunc* to the date of seizure. This order reflects its finding that personal property seized pursuant to sections 16–13–303(2) and –308(1) is forfeit at the time of seizure. The United States contends that such an interpretation of the Public Nuisance statute is incorrect, as the intent of the General Assembly was to divest the property owner of all rights in the seized property only upon the entry of a final order of forfeiture under section 16–13–309. In support of its position, the United States points out that the statute does not explicitly provide for the final order to relate back to the date of seizure or any other prior act or date. For the reasons discussed below, we disagree with the United States and find that the trial court's final order was correct.

## II.

The Public Nuisance statute does not clearly indicate when property rights in seized property are terminated. This court's interpretation of such a deficiency in a statute is therefore guided by section 2–4–203, 1B C.R.S. (1980). *Marquez v. Prudential Property & Casualty Insurance Co.*, 620 P.2d 29 (Colo.1980). Factors that may be considered in determining the intention of the General Assembly include the legislative declaration or purpose, and the consequences of a particular construction. The legislative policy of the statute in question is clearly set forth in section 16–13–302: "It is the policy of the general assembly that every public nuisance shall be restrained, prevented, abated, and perpetually enjoined."

The position taken by the United States is untenable in light of the General Assembly's stated policy. The statute's provisions guiding the seizure and forfeiture of property are designed to implement this policy. If the owner is not divested of all property interests until the date of the final order under section 16–13–309(2), the owner may be able to transfer title to the seized property, use it as a security for a loan, or otherwise alter the ownership rights affected by a subsequent forfeiture order. The owner could benefit financially from such actions, and the state could be forced to decide whether to pursue forfeiture proceedings against a party who was not in any way involved with the creation or maintenance of the public nuisance. The General Assembly did not intend for such benefits to be available to persons whose property is seized as a public nuisance.[3] Therefore, we find that the legislative intent was to divest the property owner of all legal title as of the date of seizure.

Further support for our reading of the statute is found in section 16–13–316. This

---

3. The fact that the property at issue here is U.S. currency, the ownership of which is not easily transferred after seizure, does not alter our reading of the legislative policy. We find no indication in the statute that currency is to be treated differently than other personal property.

section was added to the statute in 1973,[4] and represented the recognition by the General Assembly that "a bona fide lien upon ... personal property appearing of record *prior to the seizure* of personal property" should be protected during forfeiture proceedings (emphasis added). The language used reflects the General Assembly's understanding that the time of seizure is the critical factor in determining when all ownership rights in seized property are forfeit. The General Assembly did not protect liens entered subsequent to seizure. Our finding that property seized pursuant to the Public Nuisance statute is forfeit as of the date of seizure, thereby divesting the owner of any and all property rights held at the time of seizure, clearly comports with the legislative intent and policy underlying the statute.

### III.

The conclusion that seized property is forfeit as of the time of seizure is in accord with the reasoning of the majority of other jurisdictions faced with a similar issue. In *United States v. Stowell*, 138 U.S. 1, 17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890), the United States Supreme Court held that "[a] forfeiture constitutes a statutory transfer of the right to the [sovereign] at the time the offense is committed; and the condemnation [order], when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith." The *Stowell* doctrine that a final forfeiture order relates back to the date of the wrongful act "is as ancient as it is harsh, but it is of continuing vitality." *United States v. One 1975 Chevrolet K–5 Blazer*, 495 F.Supp. 737, 744 (W.D.Mich. 1980).

The federal forfeiture statute applied in *Stowell* required that unregistered liquor-making apparatus "shall be forfeited." 133 U.S. at 2 n. 1, 10 S.Ct. at 244 n. 1. This "mandatory" language is distinguishable

from the "permissive" or "discretionary" language of statutes which do not expressly provide for forfeiture to occur upon the commission of the wrongful act. The Public Nuisance statute is in the latter category, as it states that property is merely "subject to seizure, confiscation and forfeiture." § 16–13–303(2). However, we find that the application of the *Stowell* doctrine should not be limited by this distinction.

The *Stowell* doctrine has been regularly applied where a statute mandates the immediate forfeiture of property, *Henderson's Distilled Spirits*, 81 U.S. 44, 20 L.Ed. 815 (1871); *United States v. One 1967 Chris-Craft 27 Foot Fiber Glass Boat*, 423 F.2d 1293 (5th Cir.1970); *United States v. One 1975 Chevrolet K–5 Blazer*, 495 F.Supp. 737 (W.D.Mich.1980); *State v. Crampton*, 30 Or.App. 779, 568 P.2d 680 (1977), and where the statute states that no property rights or interests exist in confiscated property. *Metropolitan Dade County v. United States*, 635 F.2d 512 (5th Cir.1981) (ownership divested as of time of seizure); *Florida Dealers & Growers Bank v. United States*, 279 F.2d 673 (5th Cir.1960). The same doctrine has also been applied to "discretionary" or "permissive" statutes not expressly requiring forfeiture. *Ivers v. United States*, 581 F.2d 1362 (9th Cir.1978); *United States v. One Piece of Real Estate*, 571 F.Supp. 723 (W.D.Tex. 1983); *Mayo v. United States*, 413 F.Supp. 160 (E.D.Ill.1976); *United States v. One 6.5 mm Mannlicher-Carcano Military Rifle*, 250 F.Supp. 410 (N.D.Tex.1966), *rev'd on other grounds sub nom. King v. United States*, 364 F.2d 235 (5th Cir.1966); *Spagnuolo v. Bonnet*, 16 N.J. 546, 109 A.2d 623 (1954).

In *Ivers*, the appellant sought to recover funds seized by United States Customs officials because of his failure to report his possession thereof according to 31 U.S.C. § 1101 (1983). The government contended that the funds were forfeit under 31 U.S.C. § 1102(a) (1983), which provides, in relevant part:

---

**4.** Ch. 149, sec. 1, § 39–13–316, 1973 Colo.Sess. Laws 508.

"Any monetary instruments ... with respect to which any report required to be filed ... has not been filed ... are *subject to* seizure and forfeiture to the United States" (emphasis added). The Ninth Circuit Court of Appeals, citing *Stowell*, recognized that when a statute provides for the forfeiture of property as a consequence of the commission of an unlawful act, the forfeiture is effective immediately upon the commission of the act. *Ivers*, 581 F.2d at 1367. The court considered the *Stowell* doctrine to be a "general principle" of statutory forfeitures. *Id.* No distinction was made between the "permissive" language of the customs statute and the "mandatory" language of other forfeiture statutes.

It is somewhat ironic that the United States argues in the case at hand against the position it took in *Ivers* and the other cited cases, where the federal government had seized property and successfully argued that a forfeiture order related back to the commission of the wrongful act. The reasoning of these decisions reaffirms our conclusion that upon the final adjudication of forfeiture under the Public Nuisance statute, the forfeiture relates back at least to the date of seizure. In so deciding we choose not to follow the reasoning of *United States v. Currency Totalling $48,-318.08*, 609 F.2d 210 (5th Cir.1980), and *United States v. Mayor & City Council of Baltimore*, 564 F.2d 1066 (4th Cir.1977), in which the courts ruled that title is not divested until a final ruling of forfeiture is entered.[5]

For the above reasons we find that a final forfeiture order pursuant to section 16–13–309 relates back to the date of seizure of the property. Our answer to the question presented by the United States District Court is, therefore: No property interest is retained by a person subsequent to the seizure of property but prior to a final judicial determination.

**5.** The Maryland forfeiture statute at issue in *Baltimore* was subsequently amended so that all title and property rights vest immediately upon seizure to the seizing authority. Md.Ann.Code art. 27, § 264(a)–(d) (1957).