7 F.3d 480
 UNITED STATES of America, Plaintiff-Appellee,
v.
37.29 POUNDS OF SEMI-PRECIOUS STONES; 2.45 Pounds of
Semi-Precious Stones (92-6337); and .26 Pounds of
Semi-Precious Stones (92-6338), Defendants,
Newport U.S.A., Inc., Claimant-Appellant.
 Nos. 92-6337, 92-6338.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 23, 1993.
Decided Oct. 12, 1993.
 
 Robert E. Rawlins, Asst. U.S. Atty. (argued and briefed), Karen K. Caldwell, U.S. Atty., Lexington, KY, for U.S.
 David C. Trimble (argued), Don A. Pisacano (briefed), Stites & Harbison, Lexington, KY, for Newport U.S.A., Inc.
 Before: MILBURN and NELSON, Circuit Judges; and GILMORE, Senior District Judge.*
 MILBURN, Circuit Judge.
 
 
 1
 Claimant Newport U.S.A., Inc. appeals the district court's order striking Newport's claim for lack of standing to contest the forfeiture action brought by the United States against three lots of semi-precious gemstones. On appeal, the issues are (1) whether the Assignment of Claims Act, 31 U.S.C. § 3727, invalidates the assignment under which Newport claims an interest in these proceedings and, therefore, bars Newport's standing to contest the forfeiture of the gemstones; and (2) whether the common law relation back doctrine bars Newport's standing to contest the forfeiture of the gemstones. For the reasons that follow, we reverse and remand.
 
 I.
 
 2
 On October 17, 1989, the United States of America initiated these actions for forfeiture in rem of three quantities of semi-precious gemstones based upon allegations that the semi-precious gemstones were introduced into the United States contrary to law. A separate lot of gemstones was represented by each of three forfeiture actions which were consolidated by the district court into two actions. This court has consolidated those two actions into one for purposes of this appeal. The United States alleges that the gemstones were imported without proper and accurate customs declaration and entry, in violation of 19 U.S.C. § 1485 and 19 C.F.R. § 141.1 et seq., which acts are the basis for forfeiture sought pursuant to 18 U.S.C. § 545.[1]
 
 
 3
 As alleged in the government's complaint, Mark Lewis was an American citizen residing in Brazil, who in November 1984 met Antonio Calvares, a Brazilian wholesale dealer and exporter of gemstones and shareholder in Embraime Corporation. Lewis began working as Calvares' and Embraime's agent, selling gemstones on a commission basis. Between January and June of 1985, Lewis entered the United States with gemstones supplied by Calvares, which the government alleges were introduced contrary to law with regard to customs declarations and which were substantially undervalued. On September 4, 1985, more than four years before the United States filed these forfeiture actions, United States Customs agents seized .26 pounds of semi-precious gemstones from claimant Elizabeth Rawlins in Lexington, Kentucky. On August 17, 1985, 2.45 pounds of gemstones were seized from a nonclaimant. Other gemstones were seized from Mark Lewis, whose present whereabouts are unknown.
 
 
 4
 On December 12, 1989, Newport U.S.A. filed verified claims in these civil forfeiture actions. Although Newport existed as a corporate entity at that time, Embraime Corporation did not assign its interest in the seized gemstones by a written document until January 17, 1990. Newport alleges that Embraime orally assigned its rights to the gemstones to Newport before Newport filed the claims. Newport paid $50,000 as consideration for the assignment. The money was paid in cash to Calvares on two separate trips to Brazil, with each Newport-affiliated traveler carrying $10,000. Newport alleges that the reason for the assignment was that Calvares did not want to enter the United States to contest the forfeiture for fear of incarceration.[2] Brief of Claimant at 6.
 
 
 5
 In defense of its claims, Newport denies that the gemstones were imported illegally. The United States contests the validity of the assignment and asserts that Newport is only a front for Calvares, whom the government has investigated for illegal importation activity for a number of years. Because the government has contested Newport's standing, the district court has never determined whether the gemstones were imported illegally. On December 12, 1991, the United States filed motions to compel Newport to show cause why its claims should not be stricken for lack of standing, and on January 1, 1992, the United States restated its motions to compel. On March 3, 1992, Newport filed its response to the United States' motions. On August 7, 1992, the district court sustained the motions to compel, which the district court construed as motions to strike, and ordered that the claims of Newport be stricken from the record for lack of standing. This timely appeal followed.
 
 II.
 
 6
 Whether a claimant has standing to contest a forfeiture is a determination of law, and therefore this court reviews the district court's determination of standing de novo. See Michigan v. United States, 994 F.2d 1197, 1202 (6th Cir.1993). The district court's interpretation of the Assignment of Claims Act also involves determinations of law, and therefore is subject to de novo review by this court. See, e.g., NLRB v. Vemco, Inc., 989 F.2d 1468, 1474 (6th Cir.1993).
 
 
 7
 A person must have standing to become a claimant in a forfeiture action brought by the United States. A claimant party must prove that it possessed an interest in the seized property sufficient to satisfy standing requirements in order to permit a federal court to jurisdictionally recognize its entitlement to contest forfeiture. United States v. $364,960 in U.S. Currency, 661 F.2d 319, 326 (5th 1981). "A claimant need not prove the merit of his underlying claim, but he must be able to show at least a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement." United States v. One 18th Century Colombian Monstrance, 797 F.2d 1370, 1375 (5th Cir.1986), cert. denied, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1987). Where the party challenging the forfeiture is not the person in possession of the property at the time it was seized, but instead purports to be an assignee of that person, the putative assignee, in order to have standing, must prove that (1) the assignor had a valid ownership interest in the property, and (2) the assignment was valid. U.S. v. $364,960, 661 F.2d at 326.
 
 
 8
 As to the first requirement, the district court held that "[q]uestions of fact regarding Embraime's [assignor's] ownership of the gemstones preclude summary determination by the Court on this issue." J.A. at 99. The district court assumed that the assignment was otherwise valid[3] but found that Newport could not satisfy the standing requirements for two reasons: (1) because the Assignment of Claims Act, 31 U.S.C. § 3727, made the assignment between Newport and Embraime unenforceable; and (2) because the relation back doctrine barred Newport's claim. However, the district court erred because neither the Assignment of Claims Act nor the relation back doctrine is applicable to the issue of whether Newport has standing to contest the forfeiture.
 
 A.
 
 9
 The Assignment of Claims Act, 31 U.S.C. § 3727, provides in relevant part:
 
 
 10
 (b) An assignment [of a claim against the United States Government] may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued....
 
 
 11
 Because Embraime's claim to the property had not been allowed or decided before the assignment to Newport, the district court found the assignment invalid. Therefore, the district court concluded that the assignment was invalid, and Newport did not satisfy the second standing requirement for assignee claimants.
 
 
 12
 The district court erred because the Assignment of Claims Act is not applicable to an assignment of a claim in an in rem forfeiture action. The Assignment of Claims Act is applicable only to "assignment[s] of any part of a claim against the United States Government or an interest in the claim." 31 U.S.C. § 3727(a)(1) (emphasis added). The claim assigned to Newport was not a "claim upon the United States, but of an interest in property adverse to the interest held by the United States." See United States v. Currency Totalling $48,318.08, 609 F.2d 210, 213 (5th Cir.1980). Therefore, the assignment to Newport did not have to comply with the requirements of the Assignment of Claims Act to be valid. See id.; United States v. $13,000 in U.S. Currency, 733 F.2d 581, 584 (8th Cir.1984).
 
 
 13
 In United States v. $13,000 in U.S. Currency, DEA agents seized a shoulder bag full of cash from a suspected cocaine dealer. The suspect later assigned his interest in the contents of the shoulder bag to his attorneys in consideration for legal services. The Eighth Circuit held that the attorneys had standing to contest the forfeiture action brought by the United States because the Assignment of Claims Act did not apply since the attorneys' claim was not against the United States. 733 F.2d at 584.
 
 
 14
 In United States v. Currency Totalling $48,318.08, the United States seized money and drugs that were transported across the border of the United States from Mexico. The person transporting the items was indicted for importing a controlled substance and transporting currency in excess of $5,000 into the United States without filing the report required by customs laws. This person then assigned his rights to some of the money to his attorney. The government argued that the attorney did not have standing to contest the forfeiture action brought by the United States against the seized money because the assignment did not comply with the Assignment of Claims Act. The Fifth Circuit held that the Assignment of Claims Act was inapplicable because the assignment "was not of a claim upon the United States, but of an interest in property adverse to the interest held by the United States." 609 F.2d at 213.
 
 
 15
 These cases demonstrate that the Assignment of Claims Act was not designed to apply to forfeiture actions. A forfeiture action is brought by the United States as plaintiff against an inanimate object as defendant. Any person with a claim to the inanimate object intervenes as a claimant. These intervenors have claims that compete with the claim of the United States, but there are no claims against the United States in a forfeiture in rem action brought by the United States. Therefore, the assignment to Newport was not barred by the Assignment of Claims Act.
 
 
 16
 The government relies on two district court cases for the proposition that a claimant's claim in a forfeiture action is a claim against the United States. See Marger v. Bell, 510 F.Supp. 9 (D.Me.1980); Fisher v. United States, 40 AFTR2d (P-H) 77-5069 (E.D.N.Y.1977). Those cases are distinguishable from the present case because they were not forfeiture in rem actions but, rather, actions brought directly against the United States as defendant. In Marger v. Bell, an attorney, who had been assigned an interest in money that the DEA had seized from his client, brought an action against the Attorney General of the United States and the United States as defendants for return of the money under Federal Rule of Criminal Procedure 41(e). The district court held that the attorney's claim was a claim against the United States, and therefore the Assignment of Claims Act invalidated the assignment. 510 F.Supp. at 13. Similarly, in Fisher v. United States, an attorney, who had been assigned an interest in money seized from his client, brought an action against the United States as defendant for return of the money. The district court held that "[t]he claim to the money was at best a jus in personam ad rem rather that a right in rem, and the right was contested, and it was asserted against a sovereign," and therefore the Assignment of Claims Act invalidated the assignment. 40 AFTR2d at 77-5072. The assignments in Marger and Fisher were within the purview of the Assignment of Claims Act because they involved claims brought against the United States as defendant. Unlike the present case, they were not forfeiture in rem cases where claims are against the property itself, not the United States.
 
 
 17
 The reasoning of the Fifth and Eighth Circuits' cases is persuasive. The parties, however, have failed to discuss, or even cite, those cases which, in our view, would have guided the district court to a different result.[4] Instead, the parties discuss several district court cases that they assert indicate that the Assignment of Claims Act is inapplicable where the seized property is not contraband per se but only derivative contraband. See United States v. $22,993 in Currency, 332 F.Supp. 1277 (E.D.La.1971); Rogers v. United States, 511 F.Supp. 82 (D.C.Minn.). Included in the term contraband per se are "things which intrinsically are illegal to possess," such as illegal narcotics, unregistered stills, counterfeit money, sawed-off shotguns, and illicit gambling devices. State v. Manuel, 426 So.2d 140, 144 (La.1983). Included in the term derivative contraband are things that are not ordinarily illegal, like guns, automobiles, ships, and currency, that become forfeitable because of their relationship with a criminal act. United States v. $50,000 U.S. Currency, 757 F.2d 103, 106 (6th Cir.1985). The United States argues that the gemstones are contraband per se because "[t]he gemstones themselves were imported into the United States 'contrary to law,' " and "[t]hey are not the proceeds of other criminal activity but are in fact the 'guilty res' (in terms of forfeiture law) of the criminal activity, i.e. smuggling." Brief of United States at 30-31. On the other hand, claimant Newport argues that the gemstones are at most derivative contraband because they may be legally possessed and have not been shown to be illegally imported. The district court held that the gemstones were contraband per se because "[t]he gems were mandatorily forfeited pursuant to 18 U.S.C. § 545 because they were believed to have been brought into the country via customs documents which contained false invoicing and misrepresentations regarding the true owner of the gems, as the United States learned from the importer of the gems, Mark Lewis." J.A. at 104 (emphasis added).
 
 
 18
 The supposed reason for the distinction between contraband per se and derivative contraband is that if the seized property is contraband per se, the government owns the property upon seizure. Therefore, any claim to that property can be properly understood as a claim against the government. However, if the seized property is only derivative contraband, the government does not own the property until it proves its right to ownership under the applicable forfeiture statute. The government is only a claimant to the property. Therefore, any other claimant's claim to the property cannot be properly understood as a claim against the government.
 
 
 19
 Understanding the reason for the distinction resolves the dispute. "Had ownership vested in the United States by mere seizure of the property, it would have been unnecessary for the United States to institute this forfeiture proceeding." $22,993 in Currency, 332 F.Supp. at 1279. For items that are contraband per se, such as illegal drugs, no forfeiture proceeding is necessary. In the present case, the gemstones are not contraband because the government has not yet shown they were illegally imported. This forfeiture action was brought by the United States to show illegal importation but it has not yet done so because the United States is disputing a claimant's standing. Until the United States proves illegal importation, the gemstones are not the property of the United States, and Newport's claim to the gemstones is not a claim against the United States. Thus, the distinction between contraband per se and derivative contraband is an irrelevant distinction for the purposes of determining whether the Assignment of Claims Act bars an assignee-claimant's standing to contest an in rem forfeiture action brought by the United States.
 
 
 20
 Not only does the express wording of the Assignment of Claims Act demonstrate that the Act does not apply to the assignment between Embraime and Newport, the purposes of the Act are not implicated by the facts of this case. The purposes of the Assignment of Claims Act were recognized in United States v. Shannon, 342 U.S. 288, 72 S.Ct. 281, 96 L.Ed. 321 (1952), where the Court held that the assignment of a claim for damages to land allegedly caused by the United States was invalid under the Assignment of Claims Act. The Act's " 'primary purpose was undoubtedly to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the Government.' " Id. at 291, 72 S.Ct. at 283 (quoting United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 373, 70 S.Ct. 207, 212, 94 L.Ed. 171 (1949)). The government does not argue that Newport is a "person of influence" that has been "buying up claims." Thus, there is no dispute that the Act's "primary purpose" is inapplicable to this case.
 
 
 21
 A "second purpose was 'to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant.' " Id. (quoting Aetna Surety, 338 U.S. at 373, 70 S.Ct. at 212). Although the assignment to Newport prevents the government from dealing directly with Embraime and Calvares, this second purpose is not implicated because there is no possibility of multiple payment of claims. The time for asserting a claim in this forfeiture action has long since expired. There can be no additional claims brought.
 
 
 22
 A third purpose recognized was "to save to the United States 'defenses which it has to claims by an assignor by way of set-off, counter claim, etc. which might not be applicable to an assignee.' " Id. 342 U.S. at 291-92, 72 S.Ct. at 284 (reference omitted). As to this third purpose, the government argues that "Newport U.S.A. can and does claim ignorance of the many defenses which the United States could assert if Antonio Calvares and his dissolved corporation, Embraime, were before this Court." Brief of United States at 23. However, the government does not identify any defense, claim, set-off, or counterclaim against Embraime or Calvares that they could assert which could not be applied to Newport. Whatever defenses there are to avoid releasing the gemstones and whatever importation laws were violated permitting seizure of the gemstones apply to any claimant, including Newport.
 
 
 23
 The Assignment of Claims Act is inapplicable to this forfeiture in rem action because there is no claim against the United States. Furthermore, the purposes of the Act are not implicated by the facts of this case. Thus, the district court erred by applying the Assignment of Claims Act to invalidate the assignment between Embraime and Newport and, therefore, to bar Newport's standing to contest the forfeiture of the gemstones.
 
 B.
 
 24
 The district court also found that Newport lacked standing to contest the forfeiture under the common law relation back doctrine set forth in United States v. Stowell, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890). Applicability of the relation back doctrine is a question of law; therefore, we review the district court's conclusion de novo. See, e.g., Public Service Credit Union v. Ernest, 988 F.2d 627, 628 (6th Cir.1993) (conclusions of law are subject to de novo review).
 
 
 25
 The relation back doctrine was articulated by the Supreme Court in Stowell, 133 U.S. at 16-17, 10 S.Ct. at 247:
 
 
 26
 whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienation, even to purchasers in good faith.
 
 
 27
 (emphasis added). This doctrine is used to establish the priority of the United States' interest in the property at the time the underlying offense was committed and, thereby, give the United States an interest superior to any interest that arose after the offense was committed. "If the government wins a judgment of forfeiture ... the vesting of its title in the property relates back to the moment when the property became forfeitable." United States v. 92 Buena Vista Ave., --- U.S. ----, ----, 113 S.Ct. 1126, 1136, 122 L.Ed.2d 469 (1993). The district court, however, used the doctrine to deny Newport's standing because Newport's interest arose after the allegedly illegal importation occurred. See United States v. One 1965 Cessna, 715 F.Supp. 808 (E.D.Ky.1989) (claimants' interest in the subject property did not arise until after the offense was committed; thus claimants did not have sufficient interests in the property to satisfy standing requirements); United States v. One Parcel of Real Estate Property Known as Rod and Reel Fish Camp, 660 F.Supp. 483, 487 (S.D.Miss.) (same), aff'd, 831 F.2d 566 (5th Cir.1987); United States v. One 1975 Chevrolet K-5 Blazer, 495 F.Supp. 737 (W.D.Mich.1980) (same).
 
 
 28
 However, in all of those cases applying the relation back doctrine, unlike the present case, the United States' right to forfeiture was not contested or had already been established. For example, in Stowell, the Supreme Court only discussed the relation back doctrine to determine the time the forfeiture took effect after it had held that the United States had a right to forfeiture. Furthermore, in One 1965 Cessna, 715 F.Supp. at 810, 813, the district court made clear that the claimant (unsecured creditor) did not contest the merits of the forfeiture. See also One Parcel of Real Estate Property, 660 F.Supp. at 487 (holding that the wrongful act occurred before the claimant's leasehold interest arose); One 1975 Chevrolet, 495 F.Supp. at 742-44 (holding that a prior adjudication had determined that the subject vehicle had been used to facilitate the transportation of marihuana, and therefore the claimant's interest that arose after this facilitation was of no effect); United States v. One 1951 Douglas DC-6 Aircraft, 525 F.Supp. 13 (W.D.Tenn.1979) (holding the government's seizure of the aircraft was proper, and the claimant's interest must yield to the government's because it was not perfected until after the illegal act), aff'd, 667 F.2d 502 (6th Cir.1981), cert. denied, 462 U.S. 1105, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983).
 
 
 29
 The relation back doctrine does not bar Newport's standing because the government has not established its right to forfeiture. Under Stowell, 133 U.S. at 17, 10 S.Ct. at 247, the condemnation does not relate back until "obtained." See also 92 Buena Vista Ave., --- U.S. at ----, 113 S.Ct. at 1136. If the government does establish its right to forfeiture of the gemstones, there is no question that its ownership will relate back to the time the gemstones were imported "contrary to law." But the government has not yet shown that the gemstones were imported "contrary to law." Since there is no ownership interest to relate back, the district court erred by applying the relation back doctrine to bar Newport's standing to contest the forfeiture of the gemstones.
 
 III.
 
 30
 For the reasons stated, the district court's order sustaining the motions of the United States to strike the claims of Newport U.S.A. and its judgment of dismissal are REVERSED, and this case is REMANDED to the district court for further action consistent with this opinion. However, we express no view as to the eventual outcome of this case.
 
 
 
 *
 The Honorable Horace W. Gilmore, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Section 545 provides in relevant part:
 ....
 Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law--
 Shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 ....
 Merchandise introduced into the United States in violation of this section, or the value thereof, to be recovered from any person described in the first or second paragraph of this section, shall be forfeited to the United States.
 
 
 [2]
 Antonio Calvares, Embraime, and Mark Lewis were indicted on December 3, 1986, by a federal grand jury in the Eastern District of Kentucky for violations of 18 U.S.C. § 545, for smuggling the defendant gemstones and other gemstones into the country in violation of customs laws
 
 
 [3]
 The United States had argued that the assignment was invalid because Embraime did not exist as a corporate entity at the time of the assignment. Because the district court did not base its decision on this argument, we express no opinion on whether Embraime existed as a corporate entity at the time of the assignment or whether this would affect Newport's standing to contest the forfeiture
 
 
 [4]
 Newport, however, does make the same argument used by those courts; i.e., that the Assignment of Claims Act is inapplicable to forfeiture actions because there is no claim against the United States. The United States responded to that argument by discussing Marger and Fisher but did not cite the adverse authority from the Fifth and Eighth Circuits