46 F.3d 1132
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE PARCEL OF PROPERTY LOCATED AT 5074 LEBANON ROAD, OLD
HICKORY, WILSON COUNTY, TENNESSEE, Defendant-Appellant.
 
 No. 93-6627.
 United States Court of Appeals, Sixth Circuit.
 Jan. 23, 1995.
 Before: MARTIN and BOGGS, Circuit Judges; and BELL, District Judge.*
 PER CURIAM.
 
 
 1
 This case comes to us after the district court denied a motion under Fed.R.Civ.P.Rule 60(b) seeking relief from the judgment in the form of a redistribution of proceeds. Because we hold that the district court did not abuse its discretion in denying relief, we affirm that court's ruling.
 
 
 2
 * Mitchell and William Bradley had used their residence as a crack house. After their arrest, the government seized the property and instituted civil forfeiture proceedings pursuant to 21 U.S.C. Sec. 881. The owner of the property, James William Bradley, was deceased, and ownership had passed to his surviving spouse and their eight children under Tennessee's intestate statute, T.C.A. Sec. 31-2-104. Two of these children had died, leaving as heirs four of James Bradley's grandchildren.
 
 
 3
 The government served copies of the Complaint and Warrant of Arrest in rem and notified all eleven[1] potential owners of the property's seizure and its impending disposition. Seven responded with claims of ownership: James Bradley's second wife Ruth, his daughter Josephine, the four grandchildren, and a son, Donald Bradley, the appellant. Two of James Bradley's sons, Daniel Lee Bradley and Glenn Miller Bradley, failed to file a claim with the government, although both had received notice of the forfeiture.
 
 
 4
 On November 7, 1991, appellant Donald Bradley filed a claim with the government. That same day, Daniel Lee Bradley and his wife conveyed their interest in the property via a quitclaim deed to appellant. On November 8, Glenn Miller Bradley and his wife also conveyed their interest to appellant.
 
 
 5
 The seven claimants reached a settlement with the government, the "Agreed Decree of Forfeiture" ("Decree"), forfeiting the property to the United States, which would in turn sell the property. Under this agreement, one-third of the proceeds went to Ruth Bradley, with the other two-thirds "to be divided among the remainder of the claimants." The property was sold for $22,678.28 on June 29, 1993, and the government sent the proceeds to the claimants: Ruth Bradley received $7,551.86 (approximately one-third), and the remaining $15,126.42 was divided evenly among the four grandchildren, appellant, and his sister Josephine, each receiving $2,521.07.
 
 
 6
 Donald Bradley moved pursuant to Rule 60 of the Federal Rules of Civil Procedure to redistribute the sale proceeds, claiming that he did not receive his full share. He argued that the quitclaim deeds he obtained from his brothers meant that he should have received more of the proceeds than the one-ninth he was awarded. Bradley also insisted that the Assistant United States Attorney who orchestrated the agreement was aware that he had these deeds, and that the settlement decree was based on this knowledge. The government moved to dismiss on the grounds that the distribution of the property divested this court of jurisdiction over the res, but the district court denied the motion.[2]
 
 
 7
 The district court denied Bradley's Rule 60 motion for relief from the judgment on the basis that correspondence between the parties during negotiations indicated that the two-thirds share was to be divided "evenly" among the other claimants. The court found it was unnecessary to consider Bradley's specific arguments because he had waived them by entering into the Decree. The court also found that Bradley settled any claims concerning the validity of his quitclaim deeds by signing the Decree.
 
 Standard of Review
 
 8
 Motions to deny relief from judgment under Rule 60(b) are reviewed under an abuse of discretion standard. Davis by Davis v. Jellico Community Hosp., Inc., 912 F.2d 129, 133 (6th Cir.1990). A court will find an abuse of discretion where it has a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Balani v. Immigration and Naturalization Serv., 669 F.2d 1157, 1160 (6th Cir.1982) (citations omitted).
 
 
 9
 Because appellant fails to specify which provision of Rule 60 justifies a modification of the agreement, we will assume, as did the district court, that he refers to the residual clause of Rule 60(b)(6): "any other reason justifying relief from the operation of the judgment." The strong interest in the finality of judgments justifies granting a Rule 60(b)(6) motion only in exceptional instances "where principles of equity mandate relief," Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir.1990), or where circumstances inflict extreme hardship. United States v. Cirami, 563 F.2d 26 (2d Cir.1977). Given the equitable basis of Rule 60(b)(6), a trial court's discretion is especially broad. McDowell v. Dynamics Corp. of America, 931 F.2d 380, 383 (6th Cir.1991).
 
 II
 
 10
 Under 21 U.S.C. Sec. 881(a)(7), the United States is empowered to seize:
 
 
 11
 All real property, including any right, title, and interest ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment....
 
 
 12
 The right to the property vests in the United States "upon commission of the act giving rise to the forfeiture;"[3] the title to the property is perfected by obtaining a judgement of forfeiture; upon obtaining a judicial decree of forfeiture, the government's title to the property "relates back" to when the illegal conduct first occurred. United States v. 92 Buena Vista Ave., 113 S.Ct. 1126 (1993); United States v. 37.29 Pounds of Semi-precious Stones, 7 F.3d 480, 486-87 (6th Cir.1993). In this case, the execution of the Decree vested title in the United States relating back to Mitchell and Steven Bradley's earliest acts of drug trafficking.
 
 
 13
 The statute also contains a so-called "innocent owner" defense:
 
 
 14
 [N]o property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 15
 21 U.S.C.A. Sec. 881(a)(7) (West Supp.1994) (emphasis added). The italicized language emphasizes that the burden of proof is on the person claiming to be an "innocent owner"--it is an affirmative defense.
 
 
 16
 In this case, it is undisputed that the property was used as a crack house. To initiate forfeiture proceedings, the government need only show probable cause of a substantial connection between the property and the illegal exchange of drugs. United States v. Rural Route 1, Box 137-B, 24 F.3d 845, 848 (6th Cir.1994). The government is then authorized to keep or sell the property, and use the proceeds for any of the purposes listed in 21 U.S.C. Sec. 881(e).
 
 
 17
 The district court properly concluded that the claimants' legal rights thus arise solely from the Decree. When the government first instituted the forfeiture action, it took steps in anticipation of litigation. The government published notice of the planned liquidation. It served the owners and heirs with copies of the complaint and notice of seizure. It sent interrogatories to those owners who filed a claim to the property, asking them for verification of ownership or heirship, and asking whether or when they became aware of the illegal activities at the property. Instead of continuing the forfeiture litigation, however, the government and the owners avoided the time and cost of litigation by negotiating a settlement. Had the government continued the forfeiture proceedings, each one of James Bradley's heirs would have been required to prove affirmatively his "innocence" in order to retain his share of the property. Thus, the Decree exchanged the heirs' potential legal claims against the government for a negotiated statement of their interest.
 
 III
 
 18
 Donald Bradley makes several equitable and legal arguments for a redistribution. His primary argument is that the language in the Decree stating "the remaining two thirds [sic] of the net proceeds [is] to be divided among the remainder of the claimants" is ambiguous and does not specify whether the funds are to be apportioned evenly. Therefore, he reasons, his purchase of his brothers' quitclaim deeds entitles him to a larger share of the proceeds.
 
 
 19
 First, neither Daniel nor Glenn Bradley "owned" a share of anything unless and until they refute the government's ownership by proving their status as "innocent owners." Having obtained the Decree, the government gained title to the property, and James Bradley's heirs only possessed a right to contest ownership under the "innocent owner" affirmative defense. However, Glenn and Daniel Bradley waived any right to contest the government's ownership by failing to submit a claim with the government attesting to a lack of involvement and knowledge of drug trafficking. Their failure to fulfill these prerequisites is fatal to any claim on the property. Furthermore, the Decree refers to dividing the money among the "claimants," not "owners." Glenn and Daniel Bradley's failure to file a claim disqualifies them from inclusion under the term "claimants," as it is used in the Decree. Therefore they have no "share" of the settlement to convey to appellant.
 
 
 20
 Even the transfer of their interests is flawed. In his brief, Donald Bradley stresses that his ownership of his brothers' shares was well-established when he filed his claim with the government on November 7:
 
 
 21
 Under penalty of perjury as provided by 28 U.S.C. Sec. 1746, the Claimant verified that he was "the owner of an interest in the ... defendant property as an heir and descendant of James William Bradley ... and by virtue of certain quitclaim deeds of record in the Register's Office of Wilson County, Tennessee...."
 
 
 22
 Petitioner's Brief at 3 (emphasis in original). However, Daniel's quitclaim deed was executed November 7 and Glenn's November 8, and both deeds were actually filed and recorded with the Register's Office on November 12 at 1:00 p.m.
 
 
 23
 Bradley's appeal to "equity" is equally unconvincing. It would be unjust to allow non-parties who sit on their rights to benefit from a settlement agreement, particularly where this would diminish the other claimants' share. If Bradley believed that the Decree was ambiguous, he should have demanded that it be made more specific. His cost and effort to acquire the quitclaim deeds provided a powerful incentive to ensure he receive his full share.
 
 
 24
 Bradley asserts that the government was made aware of his ownership of his brothers' shares by statements made in the claim he filed with the government, as well as through his answers to the government's interrogatories. Bradley's attorney further attests that he had convinced the first government attorney who handled the case that a per stirpes distribution was appropriate (which would diminish the shares of the grandchildren and increase the shares of the claiming children, including Donald Bradley), so that the "proposed agreement had been formulated with these basic understandings in mind." Therefore, appellant argues that the Decree embodies the assumption that his brothers owned a share of the property, even if that assumption was in error.
 
 
 25
 Considerable evidence supports the district court's conclusion to the contrary. First, the fact that the quitclaim deeds were not filed until November 12 weakens Bradley's contention that his initial claim on November 7 put the government on notice. Also, the government stated in a letter dated March 27, 1992, that the "remaining two thirds [sic] of the net proceeds would be divided evenly among the rest of the claimants," and this language reappears in later correspondence. His attorney's assertion that "in my mind ... Bradley's even share would necessarily include his representative share as well as the two (2) additional shares" is unsupported by any objective evidence; the reliability of the attorney's memory is damaged by his inability to remember the details of a phone call from the government's attorney prior to the mailing of the checks. Moreover, the government has no motive to injure Bradley--regardless of the division, the government ends up in the same position. In contrast, Bradley has every inducement to claim that the government reneged on its promises, as does his attorney. The error in the sworn claim of ownership that Bradley stresses was made "[u]nder penalty of perjury" casts additional doubt on his veracity.
 
 IV
 
 26
 The district court easily could have concluded after weighing this evidence that the Decree accurately reflected the parties' agreement, and after a thorough review of the record, this court has not been left with the "definite and firm conviction that the court below committed a clear error of judgment." Therefore, we AFFIRM the district court because it did not abuse the considerable discretion it enjoys in ruling on a Rule 60(b)(6) motion.
 
 
 
 *
 The Honorable Robert Holmes Bell, United States District Court Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Mitchell and William Bradley were precluded from sharing in the proceeds of the property due to their involvement in the illegal activities
 
 
 [2]
 The government moved to dismiss this appeal on the same grounds, which this court rejected in an order dated April 25, 1994
 
 
 [3]
 "All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 21 U.S.C.A. Sec. 881(h) (West Supp.1994)